KENTUCKY-TENNESSEE LIGHT & POWER CO. *v.* CITY OF
PARIS *et al.**

*(Jackson,* April Term, 1938.)

Opinion filed April 2, 1938.

---

*This case reprinted and annotated in 118 A. L. R. 1025.

TRAVIS, BROWNBACK & PAXSON, of New York City, BRUCE & BULLITT, of Louisville, Ky., and STOUT & PORTER, of Clarksville, for Power Company.

VAN DYKE & COX, M. H. GOLDSTON, and KYE RORIE, all of Paris, for City of Paris.

JAMES LAWRENCE FLY and W. C. FITTS, JR., both of Knoxville, and FRANK H. TOWNSLEY, of New York City, for Tennessee Valley Authority.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a decree of the chancellor dismissing its bill on demurrer, the complainant has appealed to this court.

The complainant, Kentucky-Tennessee Light & Power Company, operating an electric light and power plant in Paris, Tenn., filed this bill to restrain that municipality from erecting a distribution system through which the city itself proposed to sell light and power—electric current to be supplied by Tennessee Valley Authority. The mayor and aldermen of Paris were made defendants along with Harold L. Ickes, Federal Administrator of Public Works, and Tennessee Valley Authority; a decree being sought against the two governmental agencies restraining them from participating in the aforesaid project of the city by making any grant or loan of funds or by supplying electric current.

Numerous questions were raised in the bill as to the powers of the several defendants in the premises. On appeal, the assignments of error call in question the powers of the city of Paris alone.

It is insisted that the city of Paris derives any authority it has to undertake this project from chapter 32 of the Public Acts of 1935, and the complainant contends that this act is unconstitutional for various reasons. The same attack was made upon the act in *Tennessee Electric Power Company* v. *Mayor and Aldermen of Fayetteville*, 173 Tenn., 111, 114 S. W. (2d), 811, this day decided. The

validity of the act was therein sustained, and further discussion of this matter is not required.

It is further urged by the complainant that the city of Paris has disabled itself from undertaking the erection of this distribution system and engaging in competition with complainant in the sale of electric current by reason of a contract entered into between the city and the complainant in 1925.

Prior to 1925 the city was the owner of an electric light and water plant serving consumers in Paris, Tenn., and vicinity, and on December 16 of that year the city entered into an agreement with one Joseph H. Byrd whereby the said electric light and water plant with all its equipment was leased to Byrd for a term of thirty years. In consideration the lessee agreed to pay an annual rental of $30,000 per year and agreed to pay off and discharge bonded indebtedness of the city aggregating $355,000, these bonds maturing at intervals, the first set payable April 1, 1929, and the last set payable August 1, 1953. It was further agreed that the lessee was to be allowed a credit on the annual rent charge of $30,000 each year by the amount of the interest on the bonds for each year. The agreement contained another provision that upon payment by lessee of all of the bonds and upon an additional final payment of $45,000 in cash, the city would make a deed to the lessee of the properties described.

It should be noted that by agreement of the city the rights and obligations of Byrd under this contract were transferred to complainant, Kentucky-Tennessee Light & Power Company. It appears that the complainant has duly paid off the bonds that matured April 1, 1929. Other bonds have not yet matured. Complainant has also paid

all rent due and has spent large sums of money in betterments and extensions.

The contract is elaborate, containing some thirty-six paragraphs in addition to the preamble and attestation clause. In the consideration of this appeal it is only necessary to set out paragraph 8 and paragraph 21.

"8. The City may, if it so elect, re-enter the business of manufacturing electric current or serving water to consumers in the City, or may grant a franchise to any person or corporation it may elect to compete with the Lessee, without prejudicing any of its rights under the terms of this contract."

"21. The City agrees to execute and deliver such franchises, contracts and other instruments as may be necessary to vest the Lessee with a good and valid lease to the said properties, to enable the Lessee to conveniently and legally serve customers within and without the City; and it is expressly agreed and understood, in leasing said properties, the Lessee leases during the said lease period the good will of the City in said properties; and if the Lessee should become the Purchaser, he is to acquire all proper easements, rights and privileges necessary and desirable to peacefully and conveniently carry on the business of selling and delivering water and electric current to consumers, subject to the provisions of the following clause."

In general terms the argument for complainant is that the city by this contract transferred the good will of the properties sold and that the city was thereby prevented from interfering with the complainant, by competition or otherwise, in the pursuit of the business involved.

■ The contract, as we construe it, contains no stipulation against future competition from the city. Such

a stipulation has been declared by this court to be necessary upon the sale of the good will of the business, if the purchaser desires to forestall the seller from thereafter setting up a similar business. *Jackson* v. *Byrnes,* 103 Tenn., 698, 54 S. W., 984. The complainant relies on the following from *Fine* v. *Lawless,* 139 Tenn., 160, 201 S. W., 160, 162, L. R. A. 1918C, 1045:

"But, without such a stipulation, the seller of a business and its good will is precluded from interfering with the purchaser in the enjoyment of the particular business stand which is transferred by him to the purchaser. There is implied in the contract of sale the agreement that the purchaser will not be disturbed by the seller in his right to enjoy all advantages that inhere in the premises used as the place of business. By implication of law the contract binds the seller not to do any act that would prevent the vendee's use of the stand, and all advantages incident to it, to the same extent and in the same way the vendor himself might have done but for the sale."

Fine v. *Lawless,* and the cases which it follows, each deals with the sale of a private business. While a municipality in the operation of an electric light plant, perhaps in the sale of the physical properties of such plant, may be said to act in its proprietary capacity, the municipality proceeds as an agency of government when it confers upon an electric light and power company the right to use the streets and the right within the city to sell electric current to the inhabitants. This is the granting of a franchise and a franchise always comes from the sovereign or from the government.

As noted in *Fine* v. *Lawless,* in the absence of a stipulation, the protection to the purchaser of the good

will of the business arises from the contract of sale by implication. Since *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 9 L. Ed., 773, it has been the law that implications are not permissible in a grant involving the public interests; that under a charter or franchise like the one before us the grantee can claim nothing but that which is expressed. This court has repeatedly announced this rule.

In *State* v. *Clarksville & R. Turnpike Co.,* 34 Tenn. (2 Sneed), 88, the charter permitted the company to "erect a tollgate within two miles of Clarksville, and appoint a toll-gatherer thereat." The language just quoted was construed to mean "to erect a toll-gate within two miles of Clarksville, but not nearer." The court said, "public grants, like the one now before us, are to be construed strictly, and that nothing passes against the State or the public by implication."

In *Memphis Gayoso Gas Co.* v. *Williamson,* 56 Tenn. (9 Heisk.), 314, the question arose as to whether the franchise of a gas company was exclusive and the court said:

"In the *Binghampton Bridge Case,* 3 Wall. [51] 75 [18 L. Ed., 137], the court said: 'In the case of the Charles River Bridge, the rules of construction known to the English common law were adopted and applied in the interpretation of legislative grants; and the principle was recognized, that charters are to be construed most favorably to the State, and in grants by the State, nothing passes by implication. This Court has repeatedly since re-asserted the same doctrine, and the decisions in the several States are nearly all the same way. This principle is this: that all rights which are asserted against the State must be clearly defined and not raised by infer-

ence or presumption; and if the charter is silent about a power, it does not exist.'"

To like effect are *Turnpike Co.* v. *Davidson County,* 91 Tenn., 291, 18 S. W., 626, and *Turnpike Co.* v. *Montgomery County,* 100 Tenn., 417, 45 S. W., 345, 58 L. R. A., 155.

In *Red River Bridge Co.* v. *Mayor and Aldermen of Clarksville,* 33 Tenn. (1 Sneed), 176, 60 Am. Dec., 143, and *Turnpike Co.* v. *Davidson County,* 106 Tenn., 258, 61 S. W., 68, a bridge company and a turnpike company, respectively, were found to have been granted exclusive franchises and entitled accordingly to damages for their property taken by competing enterprises sanctioned by the government.

We have referred above to *Charles River Bridge* v. *Warren Bridge.* This case has been consistently followed by the Supreme Court of the United States. Intermediate decisions of that court are reviewed in *Knoxville Water Co.* v. *Knoxville,* 200 U. S., 22, 26 S. Ct., 224, 225, 50 L. Ed., 353. The later case is quite similar to the one before us. The Knoxville Water Company had a franchise from the city of Knoxville and had purchased certain properties from the city. Prior to the expiration of the franchise, the city decided to establish a water works of its own and a bill was filed to enjoin such procedure on the part of the city. The city had granted the water company an exclusive franchise as against "any other person or corporation." The court reviewed its previous decisions and held that such a grant did not protect the grantee from competition by the city. Among other things, the court said: "It is true that the cases to which we have referred involved in the main the construction of legislative enactments. But the principles they announce apply with full force to ordinances and contracts

by municipal corporations in respect of matters that concern the public. The authorities are all agreed that a municipal corporation, when exerting its functions for the general good, is not to be shorn of its powers by mere implication. If, by contract or otherwise, it may, in particular circumstances, restrict the exercise of its public powers, the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings."

*Knoxville Water Co.* v. *Knoxville* has been approved in subsequent decisions of the Supreme Court, and in *Piedmont Power & L. Co.* v. *Town of Graham,* 253 U. S., 193, 40 S. Ct., 453, 64 L. Ed., 855, contentions somewhat similar to those here made for complainant were thought not to present a substantial federal question under the Contract Clause, article 1, section 10, clause 1, or under the Fourteenth Amendment of the United States Constitution.

In *Vicksburg* v. *Vicksburg Waterworks Co.,* 202 U. S., 453, 26 S. Ct., 660, 50 L. Ed., 1102, 6 Ann. Cas., 253, the city had excluded itself as a competitor in the grant of the franchise. The same was true in *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S., 1, 19 S. Ct., 77, 43 L. Ed., 341.

We find in the contract of 1925 no exclusive rights granted to the complainant to operate an electric light and power plant in the city of Paris. A mere grant of the good will could exclude competition by implication only and implication, as we have seen, is not permissible in a grant involving the public interest.

To the contrary, we think that section 8 of the contract heretofore quoted reserves to the city the right to compete with complainant in the sale of electric current in

Paris and reserves to the city the right to grant such franchise to any other person or corporation.

By section 8 it is provided: "The City may, if it so elect, re-enter the business of manufacturing electric current or serving water to consumers in the City." Complainant contends that the city only reserved the right of manufacturing electric current for its own use, not the right of manufacturing electric current for sale. We do not agree to this. The reservation was the right to "re-enter the business of manufacturing electric current." Business was used in its commercial and industrial sense, that is, manufacturing and selling. This is made certain by the use of the word "re-enter." Into what business did the city reserve the right to "re-enter"? Reference to the preamble of the contract answers the question. It is there recited: "Whereas the City is the owner of an electric light and water plant situated in and serving consumers in Paris, Tennessee, etc., etc." The business to be re-entered, therefore, contemplated serving consumers.

Our attention is called to the concluding clause of paragraph 8. The clause follows the reservation made by the city and is "without prejudicing any of its rights under the terms of this contract." We think the reference clearly is to the city's rights. Punctuation of the paragraph shows as much. The entire paragraph was obviously for the city's benefit. The paragraph would be rendered meaningless if the reservation was followed by a provision that there should be no prejudice to the rights of complainant. Naturally any competition would be prejudicial to complainant's rights.

So, for the reasons stated and upon the authorities cited, we must conclude that complainant is not entitled

to injunctive relief against the city of Paris as herein prayed. The contract of 1925 cannot be so construed.

■ It seems proper to observe, however, that this contract, whether it be called a contract of lease with an option to buy, or whether it be called a contract of sale, is, in either event, executory. It has been held in Tennessee since *Applewhite* v. *Allen,* 27 Tenn. (8 Humph.), 697, that relief may be had from an executory contract upon failure of consideration. Such relief is more readily granted against the party bringing about the failure of consideration.

When this contract of 1925 was made, no one anticipated the advent of electric current subsidized by the government available to municipalities or others. The complainant, as the contract indicates, was willing to take a chance on competition from another utility company or from the city of Paris itself. Private enterprise, however, cannot compete with the Government of the United States. If the city of Paris sets up its distribution system and sells TVA supplied current through this system, it may very well result, as complainant alleges, that the value of complainant's leasehold will be destroyed and this by the act of the city of Paris. Under such circumstances, the court would gravely consider to what extent future obligations of the complainant to the city of Paris under this contract should be enforced.

The decree of the chancellor is affirmed.