## VAN TASSELL et al v. LEWIS et al.

No. 7340. Decided September 28, 1950. (222 P. 2d 350.)

See 17 C. J. S., Contracts, Sec. 112.  Consideration for contract as consideration for subsequent promise, 140 A. L. R. 484.  See, also, 12 Am. Jur. 586.

*Skeen, Bayle & Russell,* Salt Lake City, for appellants.

*Ray E. Dillman,* Roosevelt, for respondents.

WOLFE, Justice.

This action was commenced to set aside a warranty deed executed by the appellants, Carl Van Tassell and Elda Van Tassell, his wife, plaintiffs below, to to C. Ed. Lewis and Lucille M. Lewis, his wife, on the ground that there had been a failure of consideration for the conveyance.

C. Ed Lewis, a realtor with his place of business in Salt Lake City, Utah, advertised for sale a dairy farm located at Meridian, California, which the plaintiffs and their nephew, Gail Van Tassell, became interested in purchasing. On November 28, 1947, Carl and Gail Van Tassell offered to purchase that farm for $150,000 and made an earnest money payment of five hundred dollars. They then endeavored to raise additional funds by selling the plaintiff's ranch in Duchesne County, Utah. Mr. Lewis proposed purchasing the ranch for $10,000 and assuming the payment of an $8,000 note and mortgage then existing upon the property in favor of Arvin and Robert H. Moon. The plaintiffs agreed to Lewis's proposal and on December 26, 1947, they executed a warranty deed to their ranch to Lewis and his wife. Carl Van Tassell signed the deed in Duchesne, but his wife signed the deed in Peoa, Utah, where she was temporarily living with her father. That same day Lewis presented to Carl a check for $10,000 drawn on the account of the C. Ed Lewis Company in the Walker Bank and Trust Company in Salt Lake City. The check was payable to Carl and Elda Van Tassell. Carl indorsed his name and his wife's name on the check and handed it back to Lewis. Carl and Gail Van Tassell then prepared to fly to California with Lewis to further negotiate for the purchase of the dairy farm. The check and the deed were put in escrow by Lewis with a written agreement that if Carl Van Tassell were killed on the trip to California, Lewis was to return the $10,000 to Carl's wife. Lewis took with him to California a $10,000 check

drawn on Lewis's account payable to Ward and Luetha Meister, who supposedly were the owners of the dairy farm. Upon arrival at the Meister farm on December 27, 1947, a purchase agreement was entered into between Carl and Gail Van Tassell and the Meisters, in which the property was simply described as the "Meister Dairy Farm, located near the Tisdale Weir, near Meridian," Sutter County, California. The total purchase price was to be $150,000. This agreement, according to the plaintiffs, was a temporary agreement and was to stand only until their wives came to California, at which time a permanent agreement was to be drawn up in which the property, both real and personal, would be described and detailed specifically. This purchase agreement of December 27, 1947, recited the receipt of $20,000 from the purchasers and the district court found that the check for $10,000 which Lewis had drawn payable to the Meisters was given to them and was credited by them upon the $20,000 payment made by the Van Tassels. The Meisters indorsed the check which had been handed to them by Lewis and returned it to Lewis in partial payment, at least, of his commission for handling the sale.

Thereafter, Lewis returned to Salt Lake City and within a few days deposited in the account upon which they were drawn the two checks payable to the Van Tassells and the Meisters, which they had respectively indorsed and returned to Lewis. The depositing of these checks had no effect, of course, whatever upon the balance in Lewis's account. Subsequently, Lewis recorded his deed to the ranch in Duchesne County and discharged the mortgage upon that property by executing a new mortgage to one Thomas M. Hill, thereby relieving the plaintiffs of all liability under their note and mortgage to the Moons. Lewis contracted to sell the Duchesne property and the purchaser went into possession in January of 1948.

Carl and Gail Van Tassell entered into possession of the Meister farm after the agreement of December 27, 1947, was executed and stayed there for several months. After their wives came to California in February, the Van Tassells went to the county seat and endeavored to get a description of the property they were purchasing and an abstract of title to the real estate. While they were continuing their efforts the Bank of America in Yuba City, California, foreclosed a lien or a mortgage which it held upon the cattle on the Meister farm and as a result all the cattle were sold by the bank. Also, the Federal Land Bank commenced proceedings to foreclose a mortgage it held upon the real estate. The Meisters paid to the Van Tassells $9,000 which they received out of the sale of the cattle. The Van Tassels surrendered possession of the farm and returned to Duchesne.

As stated at the outset of this opinion, the plaintiffs commenced this action against the defendants to set aside the deed to the Duchesne property on the ground that there had been a failure of consideration. The court below found that Lewis paid to the Meisters $10,000 for and on behalf of the plaintiffs and at their request, and that they received full credit and satisfaction for the same on the purchase price of the Meister farm. It was further found that Lewis discharged the mortgage upon the Duchesne property, and thus that the defendants completed every act required to be performed by them by the terms of the sale. A judgment of "no cause of action" was entered in favor of the defendants.

The plaintiffs initially contend that the method by which Lewis procured possession of the deed to the Duchesne property was fraudulent from the inception in that there were not sufficient funds in the account upon which the two $10,000 checks were drawn from which the checks could be paid if presented by the payees.

The complaint, however, contains no allegation of fraud. Assuming that there were insufficient funds in Lewis's account to pay these two checks on the days they were delivered to the respective payees, we are unable to see how the plaintiffs have been damaged or prejudiced thereby. Had the payees presented the checks for payment and discovered that there were insufficient funds to cover payment of the checks, there would be merit in the plaintiffs' contention. The checks, however, were not presented for payment by the payees, but were indorsed and returned to the drawer for full considerations. In consideration for the indorsement and return of the Van Tassell check, the lower court found that Lewis paid to the Meisters $10,000 for and on behalf of the plaintiffs and at their instance and request, and that the Meisters credited that amount on the purchase price of the Meister farm. What consideration the Meisters received for their indorsement and return of the check presented to them does not clearly appear from the record, although the trial judge, as indicated in his memorandum of decision, was of the opinion that the indorsement and return of the check was, partially at least, in payment of Lewis's commission for handling the sale of the Meister farm. At any rate, that question need not concern us in this action if the Meisters credited the Van Tassells with $10,000 upon the purchase price of the farm.

The plaintiffs deny that Lewis paid $10,000 to the Meisters for and on their behalf and at their request, and assert that the lower court erred in so finding. The trial judge arrived at that finding because he was unable to find from the evidence that $20,000 had been paid to the Meisters as recited by the agreement of December 27, 1947, exclusive of the $10,000 payment allegedly made by Lewis on the Van Tassells' behalf. The written agreement of December 27th as originally drawn provided for a payment of $25,000 to be made by the purchasers upon execution of the agreement. However, that provision was

altered and by interlineation it was provided that $20,000 was to be paid upon execution of the agreement and that payments of $2,500 were to be made on January 5, 1948, and on May 5, 1948, in addition to monthly payments of $1,000, which were to be made commencing on February 1, 1948. Carl Van Tassell testified that the Meisters received: (1) a personal check for $500 from himself; (2) $4000 which Carl received from the sale of certain hay to Lewis; (3) $5500 which Gail Van Tassell paid in cash; and (4) $2500 which the Van Tassells borrowed from Lewis and gave a personal note therefor. It appears, however, from Gail Van Tassell's testimony that this latter amount was paid sometime in the middle of January and that it was the January 5th payment of $2500 referred to in the written agreement. Thus it appears that on December 27, 1947, the Meisters did or had received Carl's check for $500, the $4000 from the sale of hay and the $5500 which Gail contributed. These sums total $10,000 and it is reasonable to infer that the remaining $10,000 which the Meisters acknowledged receiving was the $10,000 which Lewis claims to have paid the Meisters on the Van Tassells' account.

In order for the plaintiffs to prevail in this action brought by them to cancel their deed to the Duchesne property on the ground that there has been a failure of consideration for the conveyance, it is incumbent upon them to demonstrate that they have not received everything that they bargained for *as payment* for that property. Let us assume for the sake of this discussion that if it can be found from the evidence that there remains a promise unperformed on the part of Lewis, which promise constituted a part of the consideration for which the plaintiffs made the conveyance, then the plaintiffs are entitled to judgment in their favor.

Lewis contends that in consideration for the conveyance

of the Duchesne property he promised to do the following and nothing more: (1) pay $10,000 to the plaintiffs, and (2) discharge by payment an $8000 note and mortgage on the property upon which the plaintiffs were obligated to Robert and Arvin H. Moon. The lower court found that Lewis had performed these two promises, and as it has been heretofore pointed out, there is competent evidence to support that finding. On the other hand, the plaintiffs contend that in addition to the above two promises, Lewis promised them in consideration for the conveyance that he would see to it that they received a "permanent" or final contract to purchase the Meister farm, along with abstracts of title, and that the "permanent" contract, with the deeds to the Meister propery, would be placed in escrow in a local bank in California. By a "permanent" or final contract, the plaintiffs have reference to a contract in which all the real and personal property comprising the "Meister farm" would be specifically enumerated and described. Lewis did not deny making the plaintiffs this promise, but contends that it formed no part of the consideration for the conveyance of the Duchesne property.

Assuming only for the purposes of argument that Lewis promised the plaintiffs that they would receive a "permanent" contract of purchase to the Meister farm and that the "temporary" contract of purchase which they entered into with the Meisters on December 27, 1947, would not have been specifically enforceable in equity because the property to be bought and sold was not adequately described in the contract, we are convinced that the failure of Lewis to perform that promise did not constitute a failure of consideration for the conveyance of the Duchesne ranch.

There is no evidence, nor can it be inferred from any evidence, that the conveyance of the Duchesne property to

Lewis was in consideration of Lewis's promise to secure for Carl and Gail Van Tassell a "permanent" contract of purchase to the Meister farm and abstracts of title thereto. On the contrary, it conclusively appears that the contract for the sale and purchase of the Duchesne property between the plaintiffs and Lewis had been made and partly performed before Gail and Carl Van Tassell went to California with Lewis to negotiate for the purchase of the Meister farm, at which time Lewis purportedly made his promise. The most that can be said in favor of the plaintiffs is that the sale of their farm in Duchesne County was in anticipation or in contemplation of the purchase of the Meister farm. They needed the money derived from the sale thereof to meet the down payment on the Meister farm. But "in anticipation of" and "in contemplation of" are not synonomous with "in consideration of." The latter has a technical meaning in contract law denoting that which supports or gives validity to the contract; that which supports the meeting of the minds.

As has been seen, on December 26, 1947, the plaintiffs executed the deed to their Duchesne ranch and delivered it to Lewis. Lewis, in accordance with the contract of sale, presented Carl Van Tassell with a check for $10,000. Carl thereupon indorsed his name and his wife's name upon the check and handed it back to Lewis. In consideration for the return of the check indorsed by the payees, Lewis drew another check for $10,000 upon his account, making it payable to the Meisters. With this check in his possession, Lewis, with the Van Tassell men, flew to California to close negotiations for the purchase of the Meister farm. Lewis was acting as a holder of the $10,000 for the plaintiffs. Lewis recognized that the $10,000 of which he had the possession did not belong to him, but to the plaintiffs, because prior to leaving for California, he placed the $10,000 check which he had drawn payable to the plaintiffs and which Carl had endorsed back to him, along with

the deed to the Duchesne property, in escrow with an agreement signed by Carl and himself that if Carl were killed in the airplane flight to California, the $10,000 of which Lewis had possession should be returned to Carl's wife. The trial judge in his memorandum of decision stated that it was not clear whether the escrow agreement provided that the $10,000 or the deed to the Duchesne property was to return to Carl's widow in the event of Carl's death. The only evidence on that point is found in the deposition of Lewis which was taken prior to the trial wherein Lewis stated twice that it was the $10,000 which was to be returned to Carl's wife in the event of his death en route to California. There is no evidence that it was the deed. Thus it is clear that it was the intention of the parties that if Carl were killed in an airplane disaster on the way to the Meister farm, Lewis should pay to Carl's wife the $10,000 of which he held possession, but which belonged to the plaintiffs, and that negotiations for the purchase of the Meister farm would be abandoned. Nothing more can be found in the evidence to have been embraced in that agreement.

When Lewis and Carl and Gail Van Tassell arrived in California, they met with the Meisters and the Meisters' attorney, and a contract for the purchase of the Meister farm was entered into. In this contract, the property was referred to generally as the "Meister Dairy Farm" and no attempt was made to specify or describe the realty and personalty with detail which was to be transferred by the sale. According to the plaintiffs, Carl and Gail signed this agreement only after Lewis assured them that when their wives came to California later on, a "permanent" contract would be drawn up between the parties in which the property comprising the Meister farm would be specifically described and enumerated, that abstracts of title to the realty would be furnished to the Van Tassels, and that the "permanent" contract, along with the deed to the

Meister farm, would be placed in escrow in a local bank. Contemporaneously with the signing of this "temporary" contract, Carl and Gail Van Tassell paid the Meisters $20,000 to apply on the purchase price of the farm. The Van Tassels were credited with payment of this amount in the "temporary" contract. Included in the $20,000 payment was the $10,000 of which Lewis held possession for the plaintiffs. Lewis presented to the Meisters the $10,000 check which he had drawn payable to them, and after giving the Van Tassels credit therefor on their contract, the Meisters endorsed the check and handed it back to Lewis, presumably to apply on the payment of his commission.

Was the promise made by Lewis to obtain for Carl and Gail Van Tassell a "permanent" contract, accompanied by necessary abstracts of title, and to place the contract in escrow with deeds to the Meister farm, any part of the consideration for the sale of the Duchesne property? It is evident that it was not. As has been seen, Lewis purchased the Duchesne property from the plaintiffs in order that they could raise the funds necessary to make a down payment on the purchase price of the Meister farm. When Lewis left Utah for California with Gail and Carl, the contract for the sale and purchase of the Duchesne property was made and had been performed in part. The plaintiffs had executed and delivered the deed to Lewis and Lewis had given the plaintiffs a check for $10,000. All that remained to be done to complete performance of the terms of the sale, was the discharge of the $8000 note and mortgage upon which the plaintiffs were obligated. Lewis paid and discharged that obligation when he returned from California. The sale of the Duchesne property was not even so much as subject to a condition subsequent. There was no agreement that in the event of Carl's death en route to California, the sale of the Duchesne property would be canceled and that Lewis would return the deed to Carl's widow.

As has been pointed out, the only agreement made after the contract for the sale of the Duchesne property had been made was that if Carl were killed in flight to California, Lewis would give to his widow the $10,000 of which he held possession, but which belonged, of course, to the plaintiffs. This was a very natural agreement. If Carl were killed, Carl did not wish Lewis to continue negotiations for the Meister farm, but desired that the proceeds from the sale of the Duchesne property be given to his widow. In no event was Lewis under a duty to return the deed to the Duchesne property to the Van Tassels. That contract of sale was made and performed in all respects except for the payment of the note and the mortgage to the Moons.

It may be true that Carl instructed Lewis to pay the Meisters the $10,000 on his behalf only after Lewis promised them that he would see to it that they obtained a "permanent contract" and abstracts of title and an escrow arrangement. But under no theory can this promise of Lewis relate back and become part of the consideration for the sale of the Duchesne property to Lewis. The contract for the purchase and sale of that property had been made and acted upon by the parties before they ever left Utah. Nothing promised by either party after that contract was made could become part of the consideration for the conveyance of the Duchesne property. Promises which Lewis made to the Van Tassels in California are enforceable only if the Van Tassells furnished some new consideration therefor. When Lewis allegedly made his promise, the plaintiffs were under contract to convey to him the Duchesne property for an agreed price. Under no conceivable theory can the doing of an act which a party is already obligated to do, constitute the consideration for a new promise on the part of the other party. When the parties left Utah the contract for the purchase and sale of a Duchesne property was made and partially performed. It cannot be said that it was the in-

tention of the parties at that time that if for any reason no contract of purchase of the Meister property was entered into, the deed to the Duchesne property would be returned to the plaintiffs and the $10,000 returned to Lewis. On the contrary, as has been pointed out, it was the parties' intention even in the event of something as disastrous as Carl's death on the way to California, that the sale of the Duchesne property was not to be canceled, but Lewis was simply to give Carl's wife the money which he held belonging to them.

We are powerless under the pleadings here to help the Van Tassels out of the predicament in which any lack of diligence and misplaced confidence may have placed them. Whether Lewis is liable to the plaintiffs on this promise upon the strength of which they parted with their money before obtaining abstracts of title which would have revealed that the title to the Meister farm was encumbered, or under some theory that he was an agent for the plaintiff in the Meister transaction as well as for the Meisters and that he had failed to perform his duty as such agent, is not before us for decision and consequently we express no opinion thereon. Certain it is that in his deal with the Van Tassells, Lewis was acting not as agent for the Van Tassells, but as a buyer himself. That Lewis may have bought the Van Tassell farm in order to furnish the Van Tassels with funds because he, Lewis, was financially interested in having the Meister deal completed may be admitted, but this does not change the situation. This was not a trade of the Van Tassell property for the Meister property with Lewis acting as agent for both parties in that trade. All we need here decide is that Lewis's promise to secure a "permanent contract" for the Van Tassells formed no part of the consideration for the conveyance of the Duchesne property.

The plaintiffs further contend that the lower court erred

in finding that Elda Van Tassell ratified the endorsement of her name by her husband upon the $10,000 check drawn by Lewis upon which she was a co-payee with her husband. The trial judge found that the indorsement of Mrs. Van Tassell's name was unauthorized although the defendants produced testimony that Carl represented to Lewis that he had a power of attorney from his wife to indorse her name on the check. The trial judge based his finding of ratification by Mrs. Van Tassell upon the following factors: (1) it is admitted that when she signed the deed to the Duchesne ranch, thereby releasing her statutory interest in the property, she knew her husband was to receive $10,000 and that Lewis was to assume payment of the mortgage thereon, (2) she also must have known that the proceeds for the sale were to be used in acquiring the Meister property because her husband and Gail Van Tassell left immediately after the deed was executed to take possession of the Meister property and she planned to join her husband soon in California, and (3) there is no evidence that at any time she made an inquiry as to the whereabouts of the $10,000, and from February to April, 1948, she lived on the Meister farm with her husband and accepted the benefits of the purchase contract, but made no attempt to repudiate the act of her husband.

We are convinced that the lower court did not err in finding that Mrs. Van Tassell ratified the indorsement of her name by her husband. Before an act can be ratified, the ratifying party must, of course, have knowledge of the unauthorized act. While it may be true, as Carl testified, that he did not tell her that he had indorsed her name on the check until after they returned from California, it is only reasonable to infer that she knew from the inception of the plan that the $10,000 derived from the sale of the Duchesne ranch was to be

applied on the purchase price of the Meister farm. Since she had an interest in the $10,000 and it can be fairly inferred that she knew it was to be used in purchasing the Meister farm, a ratification is made out.

There was no error in the lower court's refusal to adjudicate rights between the parties arising out of Lewis's purported promise to obtain for the plaintiffs a permanent purchase contract. As indicated by the trial judge, there is no pleading upon which the court could consider that question. The sole question raised by the pleadings was whether there had been a failure of consideration or a failure of performance for the conveyance of the Duchesne property. That question was properly resolved in favor of the defendants since they had discharged the mortgage upon the ranch and had paid to the Meisters $10,000 for and on behalf of the plaintiffs. We refrain, too, as did the lower court, from expressing any opinion as to the rights of the plaintiffs to recover from the Meisters any part of the purchase price of the Meister farm which they have paid.

The judgment below is affirmed. Costs to the respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (dissenting).

I think plaintiffs established a failure of consideration. The Van Tassells, appellants here and plaintiffs below, argue that C. Ed. Lewis, one of the defendants and respondents, was guilty of bad faith, and that since there was not sufficient funds in the bank to pay the $10,000 check which he made payable to the plaintiffs, failure of consideration is established. But it was never intended by any one that this check should be presented or paid to analyses the necessary elements of failure of consideration

plaintiffs, and so it is immaterial that there were no funds there to pay it. Neither fraud nor bad faith are necessary elements of failure of consideration, although both may be present. Neither appellants nor the prevailing opinion nor applies those elements to the facts of this case. The prevailing opinion assumes that since plaintiffs were given credit for $10,000 on the December 27th purported contract of purchase of the Meister Dairy Farm in California, there was no failure of consideration. I do not think that follows. An analysis of the law on that subject applied to the facts here presented shows that it comes within that doctrine.

Williston on Contracts, Revised Edition, Section 814, says:

"It has been said: 'Strictly speaking, there can be no such thing as a "failure of consideration." Either the promisor receives the consideration he has bargained for, or he does not. If he does not receive the consideration, there is no contract; if he does receive the consideration there can be no "failure" of consideration thereafter.' Though the expression thus criticized may be sometimes loosely used, it is not inaccurate when employed in its generic sense to cover every case where a promised exchange of values does not take place, irrespective of whether with or without the fault of a party. It is used not infrequently where mistake or fraud excuses the performance of a promise, as where a purchaser promises to pay for a supposed patent which is in fact void, or for a horse which, *unknown* to the parties or *at least to the buyer*, is not in existence at the time of the bargain. *But the fact that there is fraud or mistake will not prevent it from also being true that there is failure of consideration.* * * *

"The charge of inaccuracy against the term is due to the assumption that the consideration that fails is the consideration for a promise, whereas it is the consideration for a performance. Since the fundamental meaning of consideration is a price or exchange for something, it is as accurate terminology to speak of the consideration for a conveyance or other executed act as to speak of the consideration for a promise. * * * Failure of consideration then will exist wherever one who has either given or promised to give some performance fails without his fault to receive in some material respect the agreed exchange for that performance. Thus, one who has paid $500 in return for an agreement to transfer a horse to him fails to receive the consideration or exchange for his $500 if the horse is not transferred. * * * *The reason why the horse is not transferred may be due to excusable impossibility, as if the horse should die before the title was transferred, or it may be due to breach of duty* on the part of

the seller.   In either case the buyer may recover his payment.   *   *   *

"An analogous situation arises in bilateral contracts where both promises are still executory.  If the buyer has not yet paid the price for the horse at the time of its death, the consideration or exchange for the payment has failed, and, similarly, if the seller wrongfully breaks his promise to transfer, the buyer is not getting the exchange or consideration for the payment which he had agreed to make.  And as the seller might reclaim the price if it had already been paid, a fortiori, he is excused from keeping his promise to pay it, if not yet paid.  Failure of consideration, then, gives the disappointed party a right to rescind the contract, but it is perhaps more often used as a defense to an action on the counter-promise."   (Emphasis added.)

See Ibid, Section 137, dealing with assignment of a supposed right as a consideration, and Section 1456 to 1468 dealing with failure of consideration which will justify a rescission of a conveyance of real and personal property and when the property or value thereof may be recovered.

Restatement of the Law, Contracts, Section 274, provides:

"Failure of Consideration as a Discharge of Duty.

"(1)   In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional.  An immaterial failure does not operate as such a discharge.

"(2)   The rule of Subsection (1) is applicable though the failure of performance is not a violation of legal duty.

"Comment:

"a.   The reason for the rules in this and the following sections of this Topic, is failure of consideration.  Failure of consideration is a generic expression covering every case where an exchange of values is to be made and the exchange does not take place, either because of the fault of a party or without his fault.  In any such case a party who has not himself caused the failure of consideration by a breach of duty, may refrain from giving any part of the exchange, which he has not yet given, and generally may reclaim what he has given, or its value.

"b.   Consideration, as used in the phrase, failure of consideration, means merely an exchange in fact agreed upon.  Failure of consideration, therefore, is failure to receive such an exchange.  In the formation of contracts, consideration is the exchange for a promise (Sec. 75).  In the

present connection the consideration in question is the promised performance of one party agreed to be exchanged for that of the other.

\* \* \* \* \* \*

"Comment on Subsection (2):

"c. The law excuses a contracting party from performing his promise for a variety of reasons—infancy, insanity, impossibility caused in certain ways; but however blameles in law and fact a party to a contract may be in failing to perform his promise, if he does fail he should not have what is promised in exchange for his performance."

See also Sec. 288 and Comments a and b.

To the same effect is *Kentucky-Tennessee Light & Power Co.* v. *City of Paris,* 173 Tenn. 123, 114 S. W. 2d 815, 118 A. L. R. 1025; In *re Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697; and *American Surety Co.* v. *Conner,* 251 N. Y. 1, 166 N. E. 783, 65 A. L. R. 244. In the latter case, the court, through Mr. Chief Justice CARDOZO said, 251 N. Y. 1, 166 N. E. at page 786, 65 A. L. R. at page 250:

\* \* \* "After all, the underlying principle, running through the cases is this and nothing more, that the action for money had and received upon a failure of consideration, partial or complete, is to be ruled by broad considerations of equity and justice, and that the plaintiff may not prevail if he fails to satisfy the court that what the defendant has received should in conscience be returned."

The doctrine of failure of consideration is based on a broad, general principle of equity, and justice. The consideration which fails is the consideration given for the performance of the contract and not merely the consideration for the promise to perform. Thus, under a sealed contract where no consideration is required, in order to make a binding contract, where there is a consideration agreed upon, a failure of that consideration is a valid defense. See *In re Conrad's Estate, supra.* As stated above by Williston on Contracts, failure of consideration will exist wherever one who has given some performance fails without his fault to receive in some material respect the agreed exchange for that performance. Or as stated in Section 274, comment a, in Restatement of the Law on Contracts quoted above, failure of consideration covers

every case where an exchange of values is to be made and the exchange does not take place. And in such cases a party who has not himself caused the failure of consideration by a breach of duty may reclaim what he has given, or its value. We must keep in mind that failure of consideration may be the result of fraud, mistake or breach of contract, but none of those elements are necessary. It may grow out of circumstances where a party who fails to perform is prevented therefrom by events which are beyond his control and without any fault on his part. In such case, although the failing party is blameless, he has failed to give the performance which the other party bargained for and therefore the other party can recover the performance which he has given in exchange therefor. Failure of consideration, however, contemplates some event which was not anticipated by the parties, or at least by the injured party, at the time of making the contract, and therefore no express provision has been made for the eventualities as they occurred. This doctrine is based on justice and fair play to protect an innocent party who, without any failure or fault on his own part, does not receive the thing he bargained for or the thing the parties to the contract contemplated he would receive, and it is immaterial whether the other party is guilty of fraud, mistake, breach of contract, or whether the reason why he does not perform is something beyond his control.

Did the plaintiffs receive from the defendants the consideration of performance which they bargained for, or which the parties contemplated they should get in payment for transferring their farm to defendants? We are not concerned with the consideration which they were to receive from the Meisters, but only with their contract with the Lewises under which they transferred their Duchesne County farm. In determining this question, we should look to the substance of these transactions and not

be misled by the artificial pretenses and bookkeeping formalities. There is little or no express evidence on this subject and what their agreement was must be inferred or implied in fact from what they did and the purposes which they intended to accomplish thereby. There is practically no dispute in the evidence on the facts which have a bearing on this question.

On November 28th, 1947, at the Meister Dairy Farm in California, Gail and Carl Van Tassell, through Walter Griffiths, a salesman for C. Ed. Lewis Company, offered to purchase that farm and paid to Griffiths $500 earnest money to bind the bargain. Griffiths executed to them a receipt for this money on the usual Salt Lake City Real Estate Board form, which stated in general terms the provisions under which they proposed to purchase. It stated the number of acres, the buildings and the number and variety of livestock and implements and machinery thereon, and fixed the purchase price at $150,000 with a down payment of $24,500, on or before December 20, 1947, in addition to the earnest money. Carl and Gail Van Tassell and the Meisters all signed the acceptance of the provisions contained in the receipt.

The Van Tassells thereupon returned to Salt Lake City, where the plaintiffs listed their Duchesne County Farm for sale with the C. Ed. Lewis Company in order to raise the money for the down payment on the Meister Dairy Farm. The Lewis Company made no sale of that farm, and on December 26th, 1947, after the time fixed for making the down payment in the receipt, plaintiffs executed to defendants a deed conveying their farm to them, and it was agreed that the purchase price of that farm would be $10,000 in addition to the defendants agreeing to assume and pay an $8,000 mortgage thereon.

This deed was handed to C. Ed. Lewis in his office in

Salt Lake City, where he made a check payable to plaintiffs for $10,000 and another check payable to the Meisters for a similar amount. Lewis handed the check made to plaintiffs to Carl Van Tassell, who endorsed his and his wife's name thereon and Lewis locked this check and the plaintiff's deed in his safe. He claims that they executed an escrow agreement to the effect that if in their airplane flight to California, Carl Van Tassell was killed, the escrow would be surrendered to Mrs. Van Tassell, but as the trial court observed in his memorandum of decision he did not state whether the deed would be surrendered to her or the check. Carl denied that he signed any such instrument. Regardless of this, I think it obvious that it was the intention of the parties at that time that if for any reason no contract of purchase by the Van Tassells of the Meister Dairy Farm was entered into, the check would be held by Lewis and the deed returned to the plaintiffs. The trial court so held in its memorandum. There was no other purpose in conveying the property to the Lewises except to enable the Van Tassells to purchase the Meister Farm.

After depositing this check and deed in his safe, C. Ed. Lewis took the $10,000 check which he had made out to the Meisters and with Carl and Gail Van Tassell, flew to the Meister Farm in California. There, on December 27th, 1947, the purported contract for the purchase and sale of the Meister Dairy Farm was signed by Carl and Gail Van Tassell and the Meisters. This contract was drawn up by an attorney employed by the Meisters. The only description of the property which was purportedly being purchased and sold was "The Meister Dairy Farm, located near Tisdale Weir, near Meridian," in Sutter County, California. It acknowledged receipt by the Meisters of $20,000 down payment and provided for a payment of $2500 on January 5th, 1948, and another such payment on May 5th of that year, and the balance to be paid in monthly installments of $1,000 each, commencing on

February 1st, 1948, with interest from that date. The contract further provided that upon the complete performance of their part of the contract by the buyers, the sellers would by deed convey to them a marketable title to the property. No mention is made of any abstract and there is nothing in this instrument or in the earnest money receipt to the effect that there were any liens or mortgages whatever against either the real or personal property, and there is nothing in the record which indicates that the plaintiffs or any of the Van Tassells were told, prior to the signing of this instrument, that there were any liens outstanding against this property.

Before signing this purported contract, both the Van Tassells testified and Lewis did not deny, that he took them to one side and told them that this was only a preliminary agreement and that when their wives came down a permanent agreement would be drawn up, and this, together with the abstracts and deeds to the property and a list of the personalty which went with the farm, would be put in the bank as an escrow agreement and that he would take care of that business for them. Acting on these representations they signed that purported contract.

The trial court in its memerandum expressly found that this was only a preliminary contract, thus clearly showing that it accepted this testimony as true. From these facts and circumstances, it is clear that when the purported contract of December 27th was signed, both plaintiff Carl Van Tassell and defendant, C. Ed. Lewis, who negotiated both that contract and the contract between the plaintiffs and defendants involved in this action, understood that this instrument of December 27, 1947, was only a preliminary agreement and was not the contract on which plaintiffs were to receive a $10,000.00 credit as the consideration for deeding their Duchesne County farm to defendants but that such deed was delivered conditionally upon Lewis negotiating a

permanent enforcible contract, with abstracts of title show-ing that the Meisters held the property under such owner-ship and free of liens that they could convey a good mar-ketable title to the Van Tassells in case they lived up to their agreement.

Thereupon Lewis had the Meisters endorse the $10,000 check which he had made payable to them and brought with him from Salt Lake City, and taking that check and the Van Tassells with him, he flew back home. There he deposited the two $10,000 checks in his bank account on which they were drawn where they were stamped paid, thereby cancelling them. Shortly thereafter he recorded the deed from the plaintiffs of their Duchesne County Farm.

Lewis testified that the Meisters gave him the $10,000 check in payment of a debt that they owed him. But the only debt that he mentions that they owed him was his commis-sion for selling the Dairy farm. In Exhibit 2, one of his office bookkeeping vouchers under date of December 26th, 1947, headed "Ward and Lueltha Meister" he credits his personal investment account with $10,000 "To apply on Commission on sale of the Meister Dairy Farm at Meridian, California." It seems probable that he had an arrangement with the Meisters that he could keep whatever he got out of the Van Tassell farm as his commissions. Whatever his arrange-ments were with the Meisters with reference to this check and his commission, is immaterial to our problem here, for it is clear that the Van Tassells did not owe him any commission for his sale of this property and he did not cancel any debt which they owed him on account of the transfer of their farm to the defendants.

After coming to Utah with Lewis, the Van Tassells shortly returned to the Meister Dairy Farm in California, of which they took possession and operated for a short time. Although they frequently inquired about the title to the Dairy Farm and the permanent contract and escrow agree-

ment which Lewis had promised to arrange for them before they signed the preliminary agreement, nothing was ever done about it and on April 21, 1948, the Sutter County Branch of the Bank of America came onto the dairy farm and sold the livestock under a chattel mortgage it held and the Federal Land Bank commenced proceedings to foreclose a mortgage against the real property. The Meisters turned over $9000 to the Van Tassells which they received from the sale of the livestock and the Van Tassells returned to Utah. There is no claim whatever that this property was taken from the Van Tassells as a result of their failure to perform their part of the contract.

From these facts, it is clear that the defendants did not give plaintiffs what they bargained for in exchange for their Duchesne County farm. Making a $10,000 check payable to plaintiffs and holding it for a while in his safe with their endorsement and later depositing it in the bank on which it was drawn, was no payment for plaintiff's farm. These checks with the other maneuvers were merely bookkeeping formalities which were entirely lacking in substance. Plaintiffs' purpose in conveying their farm to defendants was to enable them to make the down payment necessary to purchase the Meister Dairy Farm, as pointed out by the trial court, the deed to their farm was never intended to become operative or of any force or effect until a contract of purchase with the Meisters had been entered into. The plaintiffs were bargaining for a $10,000 credit on the purchase of the Meister Dairy Farm and C. Ed. Lewis undertook to get them that credit and in exchange therefor he was to receive a conveyance of their farm. He did not give them that credit. All he gave them was credit on a preliminary and unenforceable conditional agreement for the sale to them of that dairy farm, which contained no valid description of the land and no mention of the livestock or machinery which was to go with it, and no arrangements whatever were made to insure that the sellers had

title to the property, or to take care of the payment of any outstanding liens or mortgages which existed against either the real or personal property.

It is unthinkable that by Carl and Gail Van Tassell signing that skimpy preliminary agreement they intended to accept the credit therein provided for whatever it might turn out to be worth in full payment for their Duchesne County farm. If there was any doubt that such was not their agreement, it is conclusively set at rest by the undisputed testimony that before plaintiffs signed the purported contract C. Ed Lewis represented to them that this was only a preliminary agreement and if they would sign it, as soon as their wives came to California, he would see that a permanent contract was drawn and that it, with an abstract and deed to the property would be placed in escrow with the bank with a proper description of the land and the livestock and implements which went with the deal. In other words, he thereby undertook by this representation to see that a binding contract should be later executed and placed in escrow in the bank under reasonably safe, business-like arrangements for title under which the Van Tassells could safely pay their money. Relying on this undertaking of C. Ed. Lewis to furnish in the future a valid and safe contract and arrangement the Van Tassells signed the preliminary agreement and took possession of the dairy farm thereunder and plaintiffs allowed the Lewises to record their deed conveying the farm to them. But they did not get the later performance which they bargained for and which C. Ed. Lewis undertook to give them in consideration and exchange for their farm. It is immaterial whether C. Ed. Lewis could have arranged such a valid and safe contract and arrangements so that the Van Tassells would have gotten good title to the property they were bargaining for from the Meisters upon full compliance with their part of the contract had he tried or whether that was impossible for him to perform. He did

not give them the performance he agreed to. This under the law constitutes a failure of consideration.

Since the defendants have paid the $8,000 mortgage which was against the property at the time plaintiffs made their deed and entered into a contract to sell the farm to a third person, it might be useless to merely cancel this deed. I think instead of canceling the deed, we should award plaintiffs a money judgment against the defendants for $10,000 with interest secured by a lien on whatever interest defendants have in the farm and the unpaid balance of the purchase price still owing to the defendants by the third party purchaser.