Karen Diane Anderson BAGGS,
Plaintiff and Appellant,

v.

Dennis R. ANDERSON, Defendant,
Respondent and Cross-Appellant.

No. 13422.

Supreme Court of Utah.

Nov. 6, 1974.

James Z. Davis, Ogden, for plaintiff and appellant.

C. Gerald Parker, Ogden, for defendant, respondent, and cross-appellant.

CROCKETT, Justice:

Plaintiff Karen Diane Anderson (now Baggs) appeals from a determination by the district court that she is estopped from enforcing collection of certain payments for child support under a divorce decree.

The foundation of this action is a divorce decree entered in Natrona County, Wyoming, on June 24, 1970, in which plaintiff was awarded custody of three minor children and $200 per month for their support. Defendant made payments through September 1971. When the October payment was not forthcoming difficulties ensued. The exact nature, details and sequence are in dispute.[1] But the essentials are: that pursuant to phone calls and conversations the plaintiff and defendant executed a written agreement on November 1, 1971, that if the defendant would pay the October and November payments, (total $400 which he then paid) and promise to make the $200 payment for December ($100 of which he later paid) he would be relieved from the payment of any further support money.

It is also shown that the defendant met and discussed the matter with the plaintiff's then fiance, Mr. Ritchie Baggs, It is stated that the latter told the defendant that he planned to marry the plaintiff; that he did not want the defendant to visit the children, nor his assistance in supporting them. The plaintiff married Mr. Baggs on November 19, 1971. A few days before that event the parties had met at lunch and there was some discussion concerning the possibility of future adoption of the children by Mr. Baggs. This did not eventuate. In fact, the following spring, in June 1972, the defendant was unwilling to consent to the adoption. The next month there followed a demand upon and refusal by defendant, as a result of which this action was commenced in our Utah court to enforce the obligations of the Wyoming divorce decree. Our courts give it full faith and credit;[2] the same as if it were a judgment of this court;[3] and under the presumption that the law of the sister state is like our own.[4]

On the basis of the evidence as to the foregoing facts the trial court granted the plaintiff judgment for the amount of support money accrued, but excepted therefrom the amount accruing for half of December 1971 to July 1972, on the ground that the plaintiff should be estopped from collecting the support money which accrued during that period; and ordered that the plaintiff be restrained from executing on the judgment so long as defendant paid $100 per month thereon. The only issue of concern presented on this appeal is the holding that the plaintiff is estopped to

---

1. The plaintiff claims that she had been ill; had lost some work time; and that she signed the agreement under duress because she was badly in need of the payments. The defendant disputes the duress; and the trial court found for him: that the plaintiff voluntarily signed the agreement. Under the usual rule of review we accept the findings of the trial court as the facts.

2. Westerfield v. Coop, 6 Utah 2d 262, 311 P.2d 787.

3. See Scott v. Scott, 19 Utah 2d 267, 430 P.2d 580.

4. Westerfield v. Coop, footnote 2 above; Todaro v. Gardner, 3 Utah 2d 404, 285 P.2d 839.

collect the support money for the period stated.

We accept the defendant's contention that there may be some circumstances under which there may arise an estoppel to collect money accrued under a divorce decree, the same as there may be an estoppel to enforce any other obligation, including the payment of money. But the rules of estoppel applicable elsewhere in the law are similarly applicable here. An essential requirement is that there must be some conduct of the obligee (plaintiff), which reasonably induces the obligor (defendant) to rely thereon and make some substantial change in his position to his detriment.[5]

For a clear understanding and analysis of the defendant's contention, it is appropriate to point out that support money can fall into two separate categories: First, the current and ongoing right of a child to receive support money from his father (parent); and second, the right to receive reimbursement for support of a child after that has been done.[6] As to the second, suppose a father (parent) fails over a period of time to furnish support of the child, and the mother, or someone else, furnishes it. That person then has the right to claim reimbursement from the parent, the same as any other past debt. This right of reimbursement belongs to whoever furnished the support; and it is subject to negotiation, settlement, satisfaction or discharge in the same manner as any other debt.

From an examination of the facts here it will be seen that the defendant's claim of estoppel relates to the first situation stated above: the right to receive current and future child support. His claim is based primarily on the agreement signed by the parties on November 1, 1971, and statements of the plaintiff and Mr. Baggs, which defendant avers had the effect of excusing him from paying future payments of child support. This court has heretofore had occasion to deal with that problem; and has held that the right to receive current and future money belongs to the minor children; and that it is not subject to being bartered away, or estopped, or in any way defeated by the conduct of the parents or others. If a parent (plaintiff) attempted to do so, that would not affect the right of the child. For example, suppose an improvident or profligate mother (or father) did so, and either dissipated the money, or even absconded with it and deserted the child, the child would still have a right to support from his father (parent); and the latter cannot divest himself of that obligation, nor defeat the child's right to support.[7]

The foregoing should perhaps sufficiently dispose of the problem here presented. However, in view of the fact that the trial court was persuaded that because of the agreement discussed above, and the plaintiff's failure to persist in attempting to collect the support money, there should be an estoppel as to that part of the children's entitlement, we further observe that there are other obstacles to the invocation of that doctrine here. A serious one is that we cannot see wherein the defendant gave any consideration for the claimed agreement that he would not have to pay any future support money. That is, he neither gave anything of value, nor suffered any legal detriment for that promise. Under the decree he was already obligated to make the payments of $200 per month. Such an agreement to do that which one is already required to do does not constitute consideration for a new promise.[8]

---

5. Easton v. Wycoff, 4 Utah 2d 386, 295 P.2d 332; Union Tank Car Company v. Wheat Brothers, 15 Utah 2d 101, 387 P.2d 1000; Restatement of Contracts, Sec. 90.

6. See Discussion pointing out this distinction in Price v. Price, 4 Utah 2d 153, 289 P.2d 1044.

7. Id. also see French v. Johnson, 16 Utah 2d 360, 401 P.2d 315, and authorities therein cited.

8. See Van Tassell v. Lewis, 118 Utah 356, 222 P.2d 350 (1950).

■ Neither is there any satisfactory showing that the defendant made any substantial change in his position ·because of reliance on the facts he claims constituted the estoppel. This requirement is not satisfied by the mere fact that he indulged in the pleasant and euphoric assumption that he would not have to meet his obligations and that he bought a more expensive car and moved to a more expensive apartment. Likewise, the mere passage of time, or the failure of a creditor (plaintiff) to bedevil the debtor for payment does not create an estoppel.[9]

■ There is yet another factor in this case worthy of note which bears on the question of invoking an estoppel against collection of the support money. That is, that the claimed estoppel appears to have been grounded to a considerable extent upon the conduct and statements of a third party, Mr. Baggs, not necessarily chargeable to the plaintiff, and much less so is it chargeable against these children on whose behalf this support money is being sued for.

Upon consideration of the matters discussed herein, in combination with the obligation to give full faith and credit to the judgment of a sister state, we do not see the circumstances shown as providing a sufficient foundation for such an estoppel to pay for the support of his children from December 1971 ($100 for that month) until July 1972.[10] Accordingly, the case is remanded for correction of the judgment by adding the support money for those months. In all other respects the judgment is affirmed.[11] The parties to bear their own costs.

CALLISTER, C. J., concurs.

ELLETT, Justice (concurring) :

I concur, and in doing so wish to add the following:

The appellant in her brief says the trial court "domesticated" the Wyoming divorce decree, whatever that means.[1]

While the trial judge did not use the term "domesticate" he did order:

[T]hat the judgment of the District Court of Natrona County, State of Wyoming, rendered on June 24, 1970, by which defendant herein was awarded an absolute divorce from plaintiff herein and defendant was ordered to pay to plaintiff support in the sum of $200.00 per month from the date of such judgment be, and the same hereby is, made the judgment and decree of this court.

I do not think we can make the judgment of a sister state the judgment of the courts of this State. All we can do with a foreign judgment is to recognize rights conferred on the parties by it and to enforce it insofar as it purports to give a money judgment to a party. We cannot modify it in any particular. We would create great mischief if we undertake to make a foreign judgment our own and then try to modify it or to enforce it.

TUCKETT, J., concurs in the views expressed in the concurring opinion of ELLETT, J.

HENRIOD, Justice (dissenting) :

Respectfully, I dissent.

It appears that the hallmark of the main opinion considerably is based on the gratui-

---

9. See French v. Johnson, footnote 7 above.

10. That a court generally does not wipe out or forgive the defendant's obligation under a judgment see Openshaw v. Openshaw, 102 Utah 22, 126 P.2d 1068, and authorities therein cited.

11. Other errors have been considered, including complaint about the trial court's amending the judgment; and refusing to award attorney's fees, which we have found to be without merit.

1. It seems to me that the term is more appropriately applied to wild animals.

ty that if anybody,—just anybody,—pays a decreed amount for X, beneficiary of a judgment,—has some kind of an immutable right to collect from the judgment debtor. The main opinion says that if someone other than the judgment debtor takes care of the obligation, "That person then has the right to claim reimbursement, . . . the same as any other past debt." It is impossible to determine who "that person" is here unless it be Baggs, her new husband, —who has no contractual rights against the old husband.

Such a concept allows an interloper, not particeps to a debt, and not a litigant in a legal proceeding, to muscle in on a contract or debt or judgment and collect on a voluntary payment of someone else's obligation,—when the latter may be subject to a legal defense on the part of the creditor, such as fraud upon the court, full payment made, bankruptcy and any of many other such defenses. If Karen is suing for what she has paid, is one thing, but if she is suing for what Baggs has furnished, is another, which seems to be the case here.

The statement of the main opinion, quoted above, completely departs from any known principles in the law of contracts.