385 P.2d 982

**BRIMWOOD HOMES, INC., Plaintiff and Respondent,**

v.

**KNUDSEN BUILDERS SUPPLY COMPANY, Defendant and Appellant,
Elbert G. Adamson et al., Cross-Defendants and Respondents.**

No. 9794.

Supreme Court of Utah.

Oct. 29, 1963.

VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for appellant.

Bell & Bell, Salt Lake City, for respondents.

CALLISTER, Justice.

This is an action involving the validity of mechanics' liens. Plaintiff, Brimwood Homes, Inc., brought suit against defendant, Knudsen Builders Supply Co., seeking the

penalty provided by statute [1] for the alleged failure of the defendant to release certain liens which plaintiff contended were invalid. The cross-defendants are purchasers of homes from plaintiff and seek the same relief. Plaintiff and cross-defendants also asked for attorney fees as provided by statute.[2]

Defendant counterclaimed, asking to recover the reasonable value of materials furnished to plaintiff for which payment had not been made and for a foreclosure of its liens. It also sought attorney fees and costs.

The court below found that the plaintiff was indebted to defendant in the sum of $3,911.64 plus interest; that although the claims of liens were invalid, they were made in good faith and, therefore, plaintiff was not entitled to the statutory penalty; and that plaintiff was entitled to $1,000 attorney fees, being the "successful party" in having the liens cancelled.

Defendant appeals from the portions of the judgment cancelling the liens and awarding plaintiff attorney fees. Plaintiff cross-appeals from the portion of the judgment awarding defendant $3,911.64.

Plaintiff owned a tract of land which it subdivided into lots upon which it was to build homes. It obtained a construction loan from Prudential Federal Savings and Loan Association. The loan was secured by individual mortgages on each lot. Defendant furnished materials which were used in the construction of the homes.

As the construction of the homes progressed, plaintiff would execute and deliver to defendant an authorization directed to Prudential to pay defendant certain amounts for materials delivered to the various lots. On the reverse side of this document was a receipt and release which the defendant was required to sign in order to receive the payment. The following is an example of such document:

CONTRACTORS AUTHORIZATION FOR PAYMENT
NON–NEGOTIABLE

01–11478

Salt Lake City, Utah
March 21, 1961.

TO PRUDENTIAL FEDERAL SAVINGS
AND LOAN ASSOCIATION:

This authorizes you to pay to Knudsen Bldrs. Supply the sum of Six Hundred Ten 60/100 DOLLARS ($610.60) for and on account of labor and/or materials furnished and delivered by said payee to the undersigned on account of construction of building and improvements on Lot 203 of

1. 38–1–24, U.C.A.1953.        2. 38–1–18, U.C.A.1953.

Jordan Village #2; said payment to be charged to the undersigned with respect to your Loan No. 01-11478.

Craft Materials $511.00      /s/ J. O. Trayner, Jr.
   Alum siding    99.60      Contractor-Owner
                            Brimwood Homes

## NON-NEGOTIABLE

(The receipt and lien release on the reverse side hereof must be executed by the payee above named.)

## RECEIPT AND LIEN RELEASE

Salt Lake City, Utah, April 21, 1961
Received from PRUDENTIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, (hereinafter designated Association), the sum of Six Hundred Ten and 60.100 DOLLARS ($610.60) in $\frac{\text{Full}}{\text{Partial}}$ payment of labor and/or materials furnished and delivered by the undersigned for construction of building and improvements on Lot 203 of Jordan Village #2. This receipt is executed and delivered by the undersigned to the Association to induce it to make payment to the undersigned of the above stated sum from funds held by it for the owner of above described real property and in consideration thereof the undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has or may hereafter acquire against said real property.

KNUDSEN BUILDERS SUPPLY CO.
/s/ Leland A. Searle, Treas.

Altogether, sixteen of these documents were executed by the plaintiff and defendant. In some instances more than one document referred to the same lot. It is of some significance that in several instances the plaintiff made payments directly to defendant without requiring any lien waiver. The basic issue to be decided in this case is the import and effect of the provision in the "Receipt and Lien Release" that "in consideration thereof the undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has or may hereafter acquire against said real property."

Defendant contends that it was the intention of the parties to release its right to a lien only as to the amount set forth in the authorization and, further, that there was no consideration to support the promise to release any right to a lien that it might thereafter acquire.

Plaintiff contends, on the other hand, that the authorization and release was a

three-party agreement whereby plaintiff offered to pay the defendant, through its agent, Prudential, upon the condition that the defendant release its lien rights, both present and future. The defendant by accepting the payment and signing the release was bound thereby.

Under the circumstances of this case we do not believe that the defendant, nor the plaintiff, intended that the release and waiver agreement would relate to any future lien rights which the defendant might acquire. The executed documents, designated as a "release and waiver" related only to the particular debt paid and receipted for in the particular transaction encompassed by that particular instrument. This included any lien the defendant "has or may hereafter acquire against said property" in regard only to that particular debt.

Furthermore, it must be noted that the defendant, in receiving the payments from Prudential, was being paid no more than what it was legally entitled to at that time.[3] Thus, a promise by the defendant to waive rights to future liens for other debts would be without consideration.[4]

█ It thus follows that the defendant's claims of liens were valid and it is entitled to assert and foreclose the same. The defendant being the "successful party" is

entitled to a reasonable attorney's fee to be assessed by the lower court. The cross-appeal of plaintiff is without merit.

It might appear that this decision is contrary to our holding in Holbrook v. Webster.[5] However, we believe that the issues presented in this case are different and distinguishable and, therefore, decide this case as herein indicated.

Reversed and remanded for proceedings consistent with this opinion. Costs to defendant.

CROCKETT and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

In dissenting, it seems to me that the main opinion has aborted the clear terms of a contract, reading into it something that is not there.

The release was signed by Knudsen with eyes open. It was a promise *to* Prudential that as an *inducement* to obtain funds to pay for the materials furnished, and as a consideration therefor, Knudsen would waive lien claims, past or future. It is difficult to see how Knudsen's self-serving urgence that there was no consideration for the waiver, can hurdle the parol evidence rule, and at best is a classic study in renegation. Brimwood furnished the form that Knudsen signed. Presumptively the former

---

3. Van Tassell v. Lewis, 118 Utah 356, 222 P.2d 350; Tanner v. Utah Poultry, 11 Utah 2d 353, 359 P.2d 18.

4. 76 C.J.S., Release § 14, p. 636.
5. 7 Utah 2d 148, 320 P.2d 661.

would not have insisted on its being signed if it didn't mean what it said. The release was a contract between Knudsen and Prudential, and presumptively the latter would not have paid Knudsen anything absent his release of what the document in crystal clear language said: "The undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has *or may hereafter acquire* against said real property." (Emphasis ours.)

As to the matter of consideration, Knudsen gave up an assertable lien right in consideration of receiving the funds—and he clearly said that's what he was doing. This happens frequently,—particularly · where funds are badly needed by the materialman before the last materials are to be furnished. Prudential was benefited by solidifying its claim against Brimwood, by possible elimination of a record title that might be fettered by recorded liens, in the event Prudential's mortgage proved defective. Assurance is greater and it is much easier to collect money advances made to a failing contractor, if no liens encumber the title. The lender, at least, would be a general creditor in the event of such failure and would share pro rata with others in distributing any available assets of the contractor. He might even get a solid judgment priority if his mortgage proved ineffective for any reason. I am of the opinion that there was more than ample considera-

tion for the waiver,[1] and that it ran in both directions. To say otherwise is but ipse dixit.

It seems to me that the main opinion flies in the teeth of Holbrook v. Webster.[2] The facts were identical except that in the Holbrook case the amount listed on the release was $700, while in this case it was $610. In the Holbrook case the decision specifically said there was consideration for the contract, and that the lien claimant was precluded by his signature, and the clear language of the release, which was invulnerable to modification by parol. The following language, concurred in by all the members of the Court in that case, including those concurring in the main opinion here, seems significant and controlling:

"The * * * Release is supported by a valuable consideration, is unambiguous and is not subject to being varied by parol. There is no contention that (it) * * * was procured by fraud or misrepresentation. * * The only issue is one of law. It does not lie in the mouth of appellant to say that he was mistaken in the legal effect of the release or that he did not intend that it should be given the only legal effect of which it is susceptible. * * *

\* \* \* \* \* \*

"Had the court declined to grant the motion for summary judgment and

1. 12 Am.Jur. 576, sec. 81, Contracts.

2. 7 Utah 2d 148, 320 P.2d 661 (1958).

had appellant attempted to vary the terms of the Release by testimony that appellant did not intend the release to mean what its unambiguous language shows its legal effect to be, such testimony would be inadmissible. The release is susceptible of only one meaning and absent fraud cannot be varied except by agreement of the parties."

I think that clearly there was a slander of title, and that the trial court should be affirmed in this respect and do not share the views of the majority that issues presented here are different and distinguishable from those in the Holbrook case.

McDONOUGH, J., concurs in the views expressed in the dissenting opinion of HENRIOD, C. J.