**BOISE CASCADE CORPORATION, dba Bestway Building Center, a Delaware Corporation, Plaintiff and Appellant,**

v.

**John R. STEPHENS et al., Defendants and Respondents.**

**No. 14915.**

Supreme Court of Utah.

Dec. 14, 1977.

Watkiss & Campbell, Robert S. Campbell, Jr., Robert D. Maack, Duane R. Smith, Salt Lake City, for plaintiff and appellant.

Dale T. Browning, Ogden, John T. Kesler, W. Clark Burt, Kay M. Lewis, Salt Lake City, for defendants and respondents.

ELLETT, Chief Justice:

This appeal involves only one proposition, viz.: When a materialman signs a lien waiver for material furnished and thereafter furnishes additional material on the same job, does the priority date for the subsequent material relate back to the date of first delivery?

In order to get paid, the laborer or materialman is compelled to sign a lien waiver which states that he "waives, releases, and discharges any lien or right to lien the undersigned has or may hereafter acquire against said real property."

Even the respondents do not contend that the waiver means what it says. The law is clear on that point.[1] The respondents in

---

1.  *Brimwood Homes v. Knudsen Builders Supply Co.*, 14 Utah 2d 419, 385 P.2d 982 (1963).

this case are willing to allow a lien for subsequent materials furnished, but claims that the furnishing of additional material constitutes an entirely new and different contract; and that any new lien has a priority date as of the day of first delivery of the new material. That holding is correct only when the furnishing of materials is so far separated in time that it is clear that there was no intention to relate the deliveries to any one contract to furnish them. The problem was presented to this Court in the case of *Fields v. Daisy Gold Mining Co.*,[2] wherein we stated:

The questions as to whether the material furnished to the mine was furnished under separate contracts, and as to whether it was furnished under a contract creating a continuous running account, were questions of fact, and were passed upon by the trial court adversely to the contention of the appellants, and we are not disposed upon this record to assume the right to question the correctness of the decision rendered. *In general, we consider the proper rule to be that, when all the items in the account relate to one continuous transaction between the same parties, although the goods were delivered on separate orders, and at different dates, within short intervals of each other, and the dealings of the parties indicate an expectation to continue such business relations, the transactions constitute a continuous running account, regardless of intervening irregular monthly balances in the account, which dates from the date of the last item delivered, and relates back to the time of the first delivery of material under that course of dealing or contract shown.* This presumption may be overcome and rebutted by the nature and course of dealing by the parties or by facts shown. *If the materials were furnished for separate and distinct purposes, under distinct contracts or orders requiring cash payment under circumstances tending to rebut dealings of a continuous nature, then there would be no presumption of a continuous account, and, in the absence of an express contract, a right for a lien, if any,* would date from the time of the commencement to furnish materials for the different separate contracts on each separate order. Upon this subject it is said in 2 Jones, Liens, section 1435, as follows: 'If a materialman begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, but there is a reasonable expectation that further material will be required of him, and he is afterwards called upon from time to time to furnish the same, he is generally entitled to a lien as under an entire contract. In determining a particular case the character of the account, the time within which the work was done or the materials furnished, and the purpose in doing the work or furnishing the materials afford a proper ground for the presumption either that there was or was not an understanding from the commencement that the work should be done or the materials should be furnished whenever required. *If the work was done or the materials furnished for separate and distinct purposes, or under distinct contracts or orders, though in executing one and the same contract with the owner, there is no presumption of a continuous account, and the right of lien must date from the time of doing the different jobs of work or furnishing the different parcels of materials. But if there was a continuous dealing and running account, and the work was done and the materials furnished at short intervals and were appropriate to the condition and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for the construction of the building as the same should be required; and in such case the last item of the account is the date from which the limitation of the time of filing of the lien is to be taken.'* In section 1436 it is stated that: 'Where it is to be inferred from the evidence that all the articles furnished by a contractor for the construction or repair of a house or other improvement were

2. 25 Utah 76, 69 P. 528 (1902).

furnished under one contract, it is immaterial that the furnishing of the articles may have extended over a long period, or that several months may have elapsed between two items of the account. Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand.' . . . *Part payment and settlement do not necessarily defeat the running nature of an account upon which a lien is filed.* . .[3] [Emphasis added.]

The instant case was settled by means of a summary judgment, and was not based upon any determination of whether each delivery was a separate contract, or, indeed, the same continuous transaction and course of conduct. On summary judgment, the court would not be able to say whether the deliveries of materials for which lien waivers were given were contracts separate and apart from those deliveries furnished after the liens of the respondents attached to the property or a course of conduct. The intention of the parties would have a bearing on that matter.

We reverse the summary judgment and remand the case for a determination of the priorities of the liens pursuant to the law as set out in the case of *Fields v. Daisy Gold Mining Co., supra.* It should also be noted that this case is still pending and is not a final judgment. Hence, this appeal is premature although the point was not raised on appeal.

WILKINS and MAUGHAN, JJ., concur.

CROCKETT, Justice (concurring, with additional comments):

I concur with the main opinion, and in remanding the case for a determination of facts necessary to settle the controversy. But in view of such remand, I desire to add certain observations concerning the waiver of the right to a lien, even though the principle I espouse is not necessarily involved in the facts presently shown herein.

It must be recognized that after a right to receive money, including wages, has accrued, it is a legitimate subject of waiver.[1] However, with respect to the waiver of the right to liens which may accrue in the future, the situation is somewhat different. A primary purpose of the lien statutes is to guard against a laborer (or a material supplier) from working on a building and being cheated of the reward of his labor and thus avoiding evil consequences to him, his family, and the economy generally. If he can be required to sign away his rights prospectively, the purpose of the statute can be (and likely will be) defeated. Because of the fact that such agreements to waive future rights to liens are in contravention of the law and its purpose, I think that courts should refuse to enforce such a covenant to waive rights to liens which may accrue in the future as being contrary to the law and public policy.[2] By way of analogy, the same as the court would ordinarily refuse to enforce a covenant to waive a right for redress for future negligence, or for loss by embezzlement, or for assault and battery, or other wrongful injury, which would have the effect of giving the promisee license to violate his duty under the law to the promisor.

MAUGHAN, J., concurs.

HALL, Justice (dissenting):

I respectfully dissent. The main opinion has chosen to treat a factual issue not raised by the pleadings, not ruled upon by the trial court, and not argued here on appeal.

The summary judgment was based upon *stipulated facts* raising only a law issue of *lien priority*, i. e., whether or not a lien for

**3.** See also *Gwilliam Lumber & Coal Co. v. El Monte Springs Corp., et al.,* 87 Utah 134, 48 P.2d 463 (1935).

**1.** *J. P. Koch v. J. C. Penney,* Utah, 534 P.2d 903 (1975).

**2.** See *Brimwood Homes v. Knudsen,* 14 Utah 2d 419, 385 P.2d 982 (1963).

materials furnished subsequent to the execution of a lien waiver relates back in time to the initial delivery on the job site. The parties clearly viewed the contract as one of a continuous nature for the supply and delivery of building materials and we should not assume it may have been otherwise.

The issue presented to this Court merely requires an interpretation of the effect of the clear, unambiguous lien waiver [1] upon the rights of a materialman afforded by statute.[2]

The right to assert and perfect a mechanic's lien is a statutory privilege which may be exercised or not and hence is subject to waiver.[3]

In the instant case the waiver was written in clear, unambiguous language, susceptible of a single legal effect, and supported by a valuable consideration, payment. Consequently, it was not subject to being varied by parol,[4] and there being no further genuine issue of fact, it became a law issue only, allowing for summary judgment.[5]

I would affirm the trial court.

---

1. The waiver reads in part as follows: ". . . . that in consideration thereof (payment) the undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has or may acquire against said real property."

2. U.C.A.1953, 38–1–5. Priority—Over other encumbrances.—The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently, to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; . . . .

3. *J. P. Koch, Inc. v. J. C. Penney Co.*, Utah, 534 P.2d 903 (1975); *Dwyer v. Salt Lake City Mfg. Co.*, 14 Utah 339, 47 P. 311 (1896); 53 Am. Jur.2d Mechanic's Liens, Sec. 290.

4. *Holbrook v. Webster's, Inc.*, 7 Utah 2d 148, 320 P.2d 661 (1958).

