STATE Of Utah, DEPARTMENT OF HUMAN SERVICES, ex rel. Cathy A. PARKER, Plaintiffs and Appellant,

v.

Harry D. IRIZARRY, Defendant and Appellee.

No. 930583–CA.

Court of Appeals of Utah.

May 25, 1995.

---

Jan Graham, Linda Luinstra, and Billy L. Walker, Salt Lake City, for appellant.

Barbara K. Polich and Elisabeth R. Blattner, Salt Lake City, for appellee.

Before BENCH, BILLINGS and WILKINS, JJ.

## AMENDED OPINION[1]

BENCH, Judge:

The Department of Social Services of the State of Utah (the State), on behalf of Cathy Parker, appeals the trial court's application of the doctrine of equitable estoppel to prevent Ms. Parker's recovery of reimbursement for past child support from Harry Irizarry. We affirm.

## FACTS

In June 1984, Ms. Parker and Mr. Irizarry met and began dating. Shortly thereafter, Ms. Parker became pregnant. After discovering she was pregnant, Ms. Parker temporarily moved from Utah to California. That August, Mr. Irizarry visited Ms. Parker in California and learned that she was pregnant. He then returned to Salt Lake City.

Mr. Irizarry testified that in September he sent a letter with some money to Ms. Parker, which she kept. He said that he followed up the letter with a telephone call. The trial court found that during this telephone call Ms. Parker stated that she did not want any money and would take care of herself. Mr. Irizarry testified that in November he sent another letter with approximately twenty dollars, and followed that letter with another telephone call. The trial court found that Ms. Parker again said she wanted nothing to do with him. Mr. Irizarry called again in January 1985. The trial court found that during this call she once again said she wanted nothing to do with him. In April 1985, Ms. Parker gave birth to twin girls. Ms. Parker left Mr. Irizarry's name off the twins' birth certificates.

In October 1985, Mr. Irizarry married his present wife and moved to Puerto Rico until September 1987, when they returned to Salt Lake City. He and his wife now have four children. Ms. Parker became aware of Mr. Irizarry's return to Salt Lake City in November 1988.

On May 30, 1989, the State filed a paternity action on Ms. Parker's behalf to establish that Mr. Irizarry is the father of the twins and to fix a support obligation from the time of their birth. Mr. Irizarry acknowledged his paternity by stipulation shortly after the complaint was filed and a temporary support order was set. After a trial in February 1993, the trial court entered a judgment holding Mr. Irizarry responsible for ongoing child support and for back child support from the time this action was filed. However, the trial court found that Ms. Parker was equitably estopped from collecting past due child support from the date of the twins' birth until the paternity action was filed. This determination was based on the statements Ms. Parker made to Mr. Irizarry before the twins' birth to the effect that she did not want any money or involvement from Mr. Irizarry. The State now appeals the trial court's application of equitable estoppel.

## ANALYSIS

The issue on appeal is whether the trial court erred by applying equitable estoppel to bar Ms. Parker's claim for reimbursement of back child support she has furnished.[2] "[E]quitable estoppel is 'a highly fact-dependent question, one that we cannot profitably review de novo in every case because we cannot hope to work out a coherent statement of the law through a course of such decisions.'" *Trolley Square Assocs. v. Nielson,* 886 P.2d 61, 65 (Utah App.1994) (quoting *State v. Pena,* 869 P.2d 932, 938 (Utah 1994)); *accord Terry v. Price Mun. Corp.,* 784 P.2d 146, 148 (Utah 1989). We will not overturn the trial court's application

1. This Amended Opinion replaces the Opinion in Case No. 930583–CA issued on April 13, 1995. The only modification is found in the first two paragraphs of the concurring opinion.

2. The issue of whether a mother can relieve a father from current or future support obligations is not before us; nor is the issue presented of whether a mother's statements or acts can prejudice the children's or the State's rights to seek past support from a father. The only issue in this case concerns Ms. Parker's claim for reimbursement of child support she has already provided.

of equitable estoppel absent an abuse of discretion. *Trolley Square*, 886 P.2d at 65.

▮ In *Baggs v. Anderson*, 528 P.2d 141 (Utah 1974), the Utah Supreme Court discussed the distinction between reimbursement for past due support and future support:

> it is appropriate to point out that support money can fall into two separate categories: First, the current and ongoing right of a child to receive support money from his father (parent); and second, the right to receive reimbursement for support of a child after that has been done. As to the second, suppose a father (parent) fails over a period of time to furnish support of the child, and the mother, or someone else, furnishes it. That person then has the right to claim reimbursement from the parent, the same as any other past debt. The right of reimbursement belongs to whoever furnished the support; and it is subject to negotiation, settlement, satisfaction or discharge in the same manner as any other debt.

*Id.* at 143. While the court in *Baggs* ultimately refused to apply the doctrine of equitable estoppel because the claims asserted were for current and future support, it held that the right to reimbursement for past support already furnished was a debt subject to legal and equitable doctrines. *Id.; see also Borland v. Chandler*, 733 P.2d 144, 146 (Utah 1987) (holding that equitable doctrines, such as estoppel, apply in statutory paternity actions); *Wasescha v. Wasescha*, 548 P.2d 895, 896 (Utah 1976) (holding that one who provided back child support may be estopped from seeking reimbursement for money expended).

In *Burrow v. Vrontikis*, 788 P.2d 1046 (Utah App.1990), on facts similar to the present case, this court applied equitable estoppel consistent with *Borland, Wasescha,* and *Baggs* to a claim for reimbursement for past support. In *Burrow,* the mother gave birth out of wedlock. Following the birth of the child, the mother told a friend that she wanted nothing to do with the father. The friend relayed this information to the father. Relying on this information, the father married and incurred additional financial obligations.

Seven years after the child's birth, the mother brought a paternity action seeking reimbursement for back child support. The father argued that the mother should be barred from receiving back child support by the doctrines of laches and/or equitable estoppel. The trial court concluded, based on *Zito v. Butler*, 584 P.2d 868 (Utah 1978) (per curiam), that equitable doctrines were not available in statutory paternity actions and awarded the mother four years back child support consistent with Utah Code Ann. § 78–45a–3. The father appealed.

During the course of the appeal, the supreme court overruled *Zito* and, as earlier expressed in *Wasescha* and *Baggs,* held that equitable defenses such as laches and equitable estoppel are available in paternity actions. *See Borland,* 733 P.2d at 146. Relying on *Borland,* this court reversed and remanded for a determination of whether laches and/or equitable estoppel barred the mother's action. *Burrow,* 788 P.2d at 1047.

On remand, the trial court applied equitable estoppel and found that: (1) the mother had unreasonably delayed the filing of her claim for past child support; (2) the mother's delay amounted to more than mere silence because of her representations that she wanted nothing to do with the father; and (3) the father reasonably relied upon the mother's representations. Based on its findings, the trial court concluded that the mother's claim for past child support was barred by the doctrine of equitable estoppel. *Id.* at 1048. The mother appealed.

In the second appeal, this court restated the doctrine of equitable estoppel:

> "Estoppel is an equitable doctrine which precludes parties from asserting their rights where their actions render it inequitable to allow them to assert those rights. Estoppel requires proof of three elements: (1) a statement, admission, act, or failure to act by one party inconsistent with a later-asserted claim; (2) the other party's reasonable action or inaction based upon the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudi-

ate its statement, admission, act, or failure to act."

*Id.*, at 1048 (quoting *Brixen & Christopher, Architects v. Elton,* 777 P.2d 1039, 1043–44 (Utah App.1989) (citations omitted)). This court upheld the trial court's application of equitable estoppel and ruled that the mother's claim for reimbursement of back child support was barred:

First, it is uncontroverted that appellant failed to make any request or to take any action to require respondent to pay back child support for seven years. This was an unreasonable delay. Further, with adequate evidentiary support, the trial court found that appellant made statements to a mutual friend inconsistent with requiring respondent to pay child support, which she knew or should have known would be communicated to respondent and, in fact, were. This behavior is inconsistent with her present claim that respondent owes her $7,200 for past child support.

Second, respondent failed to pay support for those seven years because he reasonably relied upon both appellant's failure to take any overt action to require him to pay, and upon her communication to the mutual friend that she did not want anything to do with him and that she would handle the rearing of the child herself. Thus, respondent's failure to pay child support was based upon more than mere silence. . . .

Third, as a result of this reliance, respondent assumed other obligations, both in his personal life and in his business, that would have been tempered had he been aware of the need and obligation to support the child.

*Id.*

■ The trial court in the present case made findings with respect to each element of equitable estoppel. First, the trial court found that Ms. Parker "made statements [and] took actions that led [Mr. Irizarry] to reasonably conclude that she wanted nothing to do with him and didn't want his support." Second, the trial court found that it was reasonable for Mr. Irizarry to rely on Ms. Parker's statements and actions. Third, the trial court found that, in reliance on Ms. Parker's statements and actions, Mr. Irizarry married and incurred additional expenses. The trial court's findings are supported by the evidence. Based upon these findings, the trial court concluded that Ms. Parker was estopped from receiving reimbursement for child support furnished prior to the filing of this action.

Ms. Parker made at least three statements that she wanted nothing to do with Mr. Irizarry and that she would take care of herself. Unlike the father in *Burrow,* Mr. Irizarry was the one who initiated the contacts between the parties in order to determine whether Ms. Parker needed his assistance. Ms. Parker's statements, in contrast to those of the mother in *Burrow,* were made directly to the father so that there was no question that he was aware of and understood Ms. Parker's position. The substance of Ms. Parker's statements, however, bear a striking resemblance to the mother's statements in *Burrow.* If anything, Ms. Parker's statements were clearer and more concise than the statements made in *Burrow.* Ms. Parker's decision to leave Mr. Irizarry off of the birth certificates also supports the trial court's decision. Like the father in *Burrow,* Mr. Irizarry reasonably relied on Ms. Parker's statements and married and incurred additional financial obligations. Under *Burrow,* the trial court in the present case was clearly acting within its discretion by ruling that Ms. Parker was estopped from receiving reimbursement for back child support.

## CONCLUSION

The trial court properly denied Ms. Parker's request for reimbursement of past child support under the doctrine of equitable estoppel. The trial court's ruling is affirmed.

WILKINS, Judge (concurring in the result):

I concur in the result reached by the majority opinion. Unfortunately, I agree that the current state of the law prohibits recovery by Ms. Parker. However, I find this troubling, and believe it is also the policy of the law to hold both parents fully accountable

for the support of their children. In my opinion, this policy should especially apply with undiminished force to a casual biological father whose fatherhood resulted from actions in which no contemplation was given to the formation of a family.

Estoppel is "an equitable doctrine which precludes parties from asserting *their [own]* rights where *their [own]* actions render it inequitable to allow them to · assert those rights." *Brixen & Christopher, Architects v. Elton,* 777 P.2d 1039, 1043 (Utah App.1989) (emphasis added). I believe application of this doctrine in a child support context should be significantly limited than the law now allows. .

It has long been recognized that the child's right to receive current or future support is his or her own and "is not· subject to being bartered away, or estopped, or in any way defeated by the conduct of the parents or others." *Baggs v. Anderson,* 528 P.2d 141, 143 (Utah 1974); *see also Larsen v. Larsen,* 5 Utah 2d 224, 227, 300 P.2d 596, 598 (1956); *Price v. Price,* 4 Utah 2d 153, 154, 289 P.2d 1044, 1044 (1955) ("Future child support effectively cannot be the subject of bargain and sale. Among other things, the State is an interested party in such matters since a child's welfare is at stake.").

In the case of a child support obligation arising in a paternity context, the interested parties are the child, parents, and the State. The child has a right to support from his or her parents. Utah Code Ann. §§ 78–45–3 (1992) (duty of father to support his child), 78–45–4 (1992) (duty of mother to support her child), 78–45a–1 (1992) (duty of father of child born outside marriage same as father of child born within marriage).

In a paternity action, the claim for past child support is already limited to four years by statute. Utah Code Ann. § 78–45a–3 (1992) ("The father's liability for past education and necessary support are limited to a period of four years next preceding the commencement of a [paternity] action."). In fact, the State argues that this statute provides adequate financial protection for the biological father, and thus should be read to preempt the availability of equitable estoppel as an additional protection.

Unfortunately, current case law prevents us from accepting the State's argument. In *Zito v. Butler,* 584 P.2d 868 (Utah 1978) (per curiam), the mother of a child brought a paternity action against the father over four years after the child's birth. The mother was awarded past child support, limited only by section 78–45a–3, which, as noted above, limits the father's liability to a period of four years next preceding the commencement of an action. The father sought to invoke the equitable doctrines of estoppel and laches in addition to the limitation already imposed by section 78–45a–3. The per curiam decision of the supreme court held summarily that these equitable doctrines do not apply in a statutory action. *Zito,* 584 P.2d at 869.

However, this reasoning was expressly overruled in *Borland v. Chandler,* 733 P.2d 144 (Utah 1987). In *Borland,* the father attempted to raise a defense of laches to a paternity action brought seven years after the birth of the child. The court held that while laches did not apply to the facts of that case, it was nevertheless available as a defense in a paternity action. The court stated:

> At common law, an equitable defense could not be raised to a legal action, and because a statutory action was legal in nature, equitable defenses would not apply. This seems to be the theory behind *Zito,* a per curiam opinion. However, Utah long ago abolished any formal distinction between law and equity. It is well established that equitable defenses may be applied in actions at law and that principles of equity apply wherever necessary to prevent injustice. Therefore, it is· clear that under appropriate circumstances, laches may bar an action for paternity.... Therefore, we conclude that to the extent that *Zito* stands for the proposition that an equitable defense is not available, it is an incorrect statement of the law and is overruled.

*Id.* at 146 (citations omitted).

The supreme court in *Borland* was not faced with the specific question of whether equitable estoppel can defeat a mother's claim for reimbursement of past child support, given the four-year limitation already imposed by section 78–45a–3. The court did not specifically address whether the four-year limitation was intended to preclude the application of equitable estoppel as to those four years. However, since the four-year limitation on past child support was part of the *Zito* case, and the supreme court overruled *Zito* in broad terms without reserving the question of the specific preemptive power of this legislative limitation, we must infer

from *Borland* that the court views the defense of equitable estoppel as available in an action to recover past child support accruing within the four-year period prior to the filing of the paternity action. This court so relied on *Borland* in *Burrow v. Vrontikis,* 788 P.2d 1046 (Utah App.1990), when it sanctioned the use of equitable estoppel as a defense to a mother's claim for back child support in a paternity action.

Based on *Zito, Borland,* and *Burrow,* we are now forced to conclude that the defense of equitable estoppel to a claim for reimbursement of past child support has not been preempted by the four year limitation of section 78–45a–3. There is no clear indication that section 78–45a–3 is intended to be the only possible limitation to any obligation arising from a child support obligation.

The doctrine of equitable estoppel is intended to prevent the sometimes harsh rule of law from working an unfairness between two parties. In a child support context, and as the law now stands, equitable estoppel is applicable between the parents *after* the child's rights are discharged. The courts are at liberty to use equitable estoppel as a tool to strike what is believed to be a fair balance between the mother and the father. However, the balance struck between the mother and father has a residual effect on the interests of the child and the State. Those interests suggest that the balance should be tilted in favor of the parent who actually furnishes support to the child. So, while equitable estoppel presently has an application in this area, its application should be severely limited and should not be invoked lightly.

In this case, the trial court found that Ms. Parker made statements *prior* to the birth of the children to the effect that she did not want Mr. Irizarry's money, or to have anything to do with him, but that at the same time she kept money proffered by him.[3] At the time she made those statements, Ms. Parker had not expended funds in support of

the twins. However, the current case law reveals that reviewing courts have failed to require strict application of the facts to the correct legal standard of equitable estoppel. Utah courts require reasonable reliance, in the form of action or inaction, as one of the elements of equitable estoppel. *See, e.g., Trolley Square Assoc. v. Nielson,* 886 P.2d 61, 65 (Utah App.1994); *Burrow,* 788 P.2d at 1048. Recognizing that such a determination is "a highly fact-dependent question," *Trolley Square,* 886 P.2d at 65, to nevertheless find reasonable reliance by a father in an action such as this should require more supporting evidence than mere communications or conduct by the mother occurring prior to her actually providing the child support.

In the present case, Mr. Irizarry seeks to estop Ms. Parker from asserting her right to reimbursement. At the time of the conduct and communications relied on by Mr. Irizarry, Ms. Parker had no right to reimbursement simply because she had not yet furnished the support. Indeed, "[t]he right of reimbursement belongs to whoever furnished the support." *Baggs,* 528 P.2d at 143 (emphasis added). It stretches the limits of reasonability to suggest that Mr. Irizarry can *reasonably* rely on conduct or communications of Ms. Parker that she will, in the future, relieve him of a legal obligation and will thereafter not assert a personal right acquired as a result of such future conduct. It would seem only logical that to act reasonably in not reimbursing Ms. Parker for the support she provided, Mr. Irizarry would have to have some knowledge that Ms. Parker actually provided that support.

Furthermore, although the application of equitable estoppel to the statements and actions of Ms. Parker prior to the birth of the twins is in keeping with the present state of the law, it leaves in jeopardy the interests of not only the children, but also those of the State. Perhaps the question of when equitable estoppel should apply in a paternity ac-

---

**3.** The trial court found that Ms. Parker made three statements to Mr. Irizarry: (1) In September 1984, Ms. Parker told Mr. Irizarry over the telephone that "she didn't want any money and would take care of herself." (2) After he sent a letter, Mr. Irizarry made a follow-up call to Ms. Parker in November 1984 and "once again she

said she wanted nothing to do with [Mr. Irizarry]." (3) In January 1985, Mr. Irizarry called Ms. Parker and "once again the plaintiff said she wanted nothing to do with him." In April 1985, the twins were born. The findings are supported by the evidence and, thus, are not clearly erroneous.

tion for past child support will be addressed by the legislature in order to give full effect to the underlying duty of a father to support his children. It is clear that the legislature intends that this responsibility be taken seriously, lest the children suffer or become a public charge. *See* Utah Code Ann. §§ 62A–11–101, –104 (1992).

BILLINGS, J., concurs in the concurring opinion of WILKINS, J.