STATE of Utah, DEPARTMENT OF HUMAN SERVICES ex rel. Cathy S. PARKER, Plaintiffs and Petitioners,

v.

**Harry D. IRIZARRY, Defendant and Respondent.**

No. 950324.

Supreme Court of Utah.

Sept. 19, 1997.

---

Jan Graham, Atty. Gen., Carol Clawson, Solicitor Gen., Annina M. Mitchell, Billy L. Walker, Jr., Asst. Attys. Gen., Salt Lake City, for plaintiffs.

Barbara K. Polich, Elisabeth R. Blattner, Salt Lake City, for defendant.

HOWE, Justice:

We granted certiorari to review the court of appeals' affirmance of the trial court's bench ruling that Cathy S. Parker's claim against Harry D. Irizarry for pregnancy and confinement expenses and reimbursement of child-rearing expenses from April 15, 1985, to May 30, 1989, is barred by the doctrine of equitable estoppel. *State Dep't of Human Servs. ex rel. Parker v. Irizarry*, 893 P.2d 1107, 1110 (Ct.App.), *cert. granted*, 910 P.2d 425 (Utah 1995). The court of appeals ruled that the trial court acted within its discretion in applying the doctrine of equitable estoppel to a situation where a parent made a claim for reimbursement of child-rearing expenses, and upheld the trial court's conclusion that the requirements of equitable estoppel had been satisfied. *Id.*

## STANDARD OF REVIEW

Before enumerating the facts, we address the standard of review. An appellate court "will not reverse the findings of fact of a trial court sitting without a jury unless they are 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *MacKay v. Hardy*, 896 P.2d 626, 629 (Utah 1995) (quoting *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (additional internal quotation omitted)). In this case, the parties do not challenge the trial court's factual findings, and the court of appeals accepted them as correct. An appellate court reviews the trial court's conclusions of law for correctness. *Newspaper Agency Corp. v. Utah State Tax Comm'n*,

938 P.2d 266 (Utah 1997); *State v. Christensen*, 866 P.2d 533, 535 (Utah 1993).

The issue of whether equitable estoppel has been proven is a classic mixed question of fact and law. As we observed in *State v. Pena*, 869 P.2d 932 (Utah 1994), we give trial court determinations of such mixed questions differing degrees of deference, depending on several considerations. The doctrine of equitable estoppel is simply stated, yet it is applicable to a wide variety of factual and legal situations. The variety of fact-intensive circumstances involved weighs heavily against lightly substituting our judgment for that of the trial court. *Id.* at 939. Therefore, we properly grant the trial court's decision a fair degree of deference when we review the mixed question of whether the requirements of the law of estoppel have been satisfied in any given factual situation.

## FACTS

At the outset, we briefly recite the trial court's uncontested findings of fact. Parker and Irizarry began a relationship in June of 1984 which led to Parker's pregnancy, discovered in July or August of 1984. When Irizarry visited Parker in California, where she had moved in July, she informed him of her pregnancy and of her belief that he was the father. He responded by offering his support to her. After returning to Utah, he telephoned and wrote to her several times. Parker apparently did not attempt to contact Irizarry during this time. On at least three occasions, once in September of 1984, once in November of 1984, and once in January of 1985, he telephoned her in California, during which conversations she told him that she did not want any money, was able to take care of herself, wanted nothing to do with him, and intended to name her offspring "Parker." In November of 1984, Irizarry sent a letter to Parker in which he thanked her for accepting approximately twenty dollars from him. There appears to have been no further contact between the parties until June of 1985 when Parker telephoned Irizarry and left a message with his roommate that she had delivered twins in April of 1985 and that she had named them "Parker."

Irizarry married his current wife in October of 1985, started a family, and moved to Puerto Rico. Parker hired a detective to locate him in February of 1987. These efforts were unsuccessful, and he had no notice that she was looking for him. Parker's mother wrote a letter to a friend of Irizarry's in August of 1987 containing a message for Irizarry that concluded with the statement, "We are not concerned about taking him to court. . . . His court will come later—he cannot say that they are not his children there." The trial court found that Irizarry received the letter when he returned to Salt Lake in September of 1987 and that Parker was apparently unaware of this letter and its contents. After seeing Irizarry in the Salt Lake City Airport, Parker filed her complaint in this action on May 30, 1989.

The trial court ruled that on these facts there was sufficient evidence to establish the elements of equitable estoppel.[1] Parker argues that estoppel should not apply because (1) a right to reimbursement that has not yet come into being cannot be waived in advance, (2) the right to child support should be independent of the personal relationship between the biological parents, and (3) an unwed father subject to the delayed filing of a paternity action is adequately protected by Utah Code Ann. § 78–45a–3, which provides, "The father's liabilities for past education and necessary support are limited to a period of four years next preceding the commencement of an action." We will address Parker's arguments as we examine the relationship between child support, reimbursement for child-rearing expenses, and the doctrine of equitable estoppel.

## ANALYSIS

### A. Distinction Between "Child Support" and "Reimbursement"

We begin by noting that no statement of rejection on Parker's part, no matter how strong, could have legally defeated the *children's* right to support. Utah's child support laws and the guidelines that accompany them are designed to maximize support to children from both of their parents. *See* Utah Code Ann. § 78–45–3(1) (1996) ("Every father shall support his child . . . ."); *id.* § 78–45–4(1) ("Every woman shall support her child. . . ."). We emphasized in *Hills v. Hills,* 638 P.2d 516, 517 (Utah 1981), that the right of minor children to support cannot be "bartered away, extinguished, estopped or in any way defeated by the agreement or conduct of the parents." (Citing *Gulley v. Gulley,* 570 P.2d 127 (Utah 1977).) It is well established that "[e]very parent has the duty to support the children he has brought into the world," and this duty is inalienable. *Gulley,* 570 P.2d at 128–29. "Moreover, the minor children who are the beneficiaries of this duty [and] not parties to [an agreement relinquishing support] . . . [cannot] be bound thereby." *Id.* at 129. Therefore, "the just and logical consequence of the duty of parents to support their children is that *if they are left in need* and *a third party* provides them necessities, he is subrogated to the child's right and may obtain reimbursement therefor." *Id.* (emphasis added) (footnote omitted).

In the instant case, however, the issue on appeal is whether the trial court abused its discretion in applying equitable estoppel to bar *Parker's* claim for *reimbursement* of child-rearing expenses *she* has paid. This is not an action for "past due child support," as Parker incorrectly represents. This is an action for reimbursement to a parent, not a third party, of monies already expended in support of children who by Parker's own admission were well cared for and not left in need. She testified specifically that the twins had never gone without food, clothing, or shelter. In *Wasescha v. Wasescha,* 548

---

1. The trial court did not specifically mention equitable estoppel in its findings of fact and conclusions of law. Rather than choosing between the parties' conflicting draft findings and conclusions, on March 8, 1993, the trial judge entered a handwritten note on the transcript of his February 11, 1993, bench ruling, adopting the ruling as his findings of fact and conclusions of law. That bench ruling did not specifically mention "equitable estoppel," but the ruling makes reference to the three elements of estoppel, namely, statements by Parker adverse to her later claim, reasonable reliance by Irizarry on those statements, and detriment to Irizarry should Parker be allowed to repudiate her prior statements. Thus, we treat this bench ruling as the trial court's judgment that the facts in this case support a finding of equitable estoppel.

P.2d 895 (Utah 1976), a mother seeking retroactive payments claimed, much as Parker does here, that her action was not for reimbursement because all sums recovered would be placed in trust for the children. This court rejected that reasoning and applied estoppel, stating that "there seems to be an admission that the children's right to support amply was supplied ..., which would eliminate their need for support or, if you please, double support." *Id.* at 896.

We clearly distinguished between actual child support and reimbursement in *Larsen v. Larsen,* 5 Utah 2d 224, 227, 300 P.2d 596, 598 (Utah 1956), stating:

> [B]ecause the state is interested in the child's welfare the parents cannot effectively release *future* payments of support money by agreeing with the other to that effect. However, this does not mean that a mother may not by her actions or representations, or both, preclude herself from recovering past due installments of support money to reimburse her for the money which she has spent for the support of the child.

Thus, once paternity is legally established, a biological mother cannot disclaim future child support on behalf of her children. Before the father is legally identified, however, he has no legal obligation to the child, and it only stands to reason that a payment cannot become "past due" until it initially becomes due. Consequently, although section 78–45a–3 recognizes a claim to retroactive payment for the four years preceding the filing of the suit, such payments are "reimbursement" rather than "child support."

This conceptual separation of "reimbursement" and "child support" recognizes the hard realities. Genuine child support must be available to meet the current needs of the child, and payments made later cannot alter the level of support that the children have already received. Understanding this, we decline to employ the euphemism "back child support" for payments that were not available to meet past needs and are not even legally required to be used for the children's present and future needs. *See Larsen,* 300 P.2d at 598. Only "reimbursement" accurately describes such payments.

Parker actively repudiated the establishment of a child support obligation, without which a right to reimbursement has no foundation, and she gave Irizarry abundant notice of that repudiation. Under our case law, the right to reimbursement is subject to legal and equitable defenses in the same manner as any other debt. *Baggs v. Anderson,* 528 P.2d 141, 143 (Utah 1974). As the court of appeals correctly observed, an appellate court "will not overturn the trial court's application of equitable estoppel absent an abuse of discretion." *Irizarry,* 893 P.2d at 1108–09; *see Utah State Dep't of Social Servs. ex rel. Borland v. Chandler,* 733 P.2d 144 (Utah 1987) (holding that laches, an equitable defense, could be asserted by defendant in paternity action).

### B. Application of Estoppel

The elements essential to invoke the doctrine of equitable estoppel are:

(1) an admission, statement or act inconsistent with the claim afterwards asserted,

(2) action by the other party on the faith of such admission, statement or act, and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979). The trial court found that (1) Parker made no calls and wrote no letters to Irizarry asking for support; (2) she left Irizarry's name off the children's birth certificates; (3) she had the support and financial assistance of her family, and her family discouraged her relationship with Irizarry; and (4) Irizarry was willing to support the children, but Parker refused support. In view of these findings, the trial court concluded that Parker

> made statements, took actions that led [Irizarry] to reasonably conclude that [Parker] wanted nothing to do with him and didn't want his support. In reliance on that, [Irizarry] got on with his life, got married and started a family and under those circumstances should not be responsible for the payment of support until ... this complaint was filed.

Although the trial court's findings are not uncontroverted, neither are they wholly lacking evidential support. Therefore, our only task is to determine whether the trial court correctly applied the law to the facts in arriving at its conclusion that estoppel applies.

■ Parker contends that a child support obligation should be independent of the personal relationship between the biological parents. We agree. However, she fails to recognize the distinction between a personal and a legal relationship and between a relationship with the child and one with the mother. While the support obligation must be independent of the father's personal relationship with the mother, it cannot be independent of his legal relationship to the child. Parker's statements that she wanted nothing to do with Irizarry or his money might possibly be interpreted as rejecting only a personal relationship with him. However, when she went further and made a point of informing him that she was naming the twins Parker, omitted his name from their birth certificate, and refused his offer of support, she strongly indicated she did not want him to have any relationship with the twins. Additionally, the trial court found, regarding the letter from Parker's mother, that although "[t]here is nothing authorizing the mother to take [the] position [that the Parkers would not seek support], ... the letter being received by [Irizarry] would strengthen his reliance and his position, or his belief that nobody was looking to him for support for these children."

■ We agree with the court of appeals that Parker's plainly worded rejections[2] of Irizarry's offers of support made directly to him, not through a third party,[3] plus her actions taken after the twins' births constituted statements inconsistent with her later asserted claim for child support. *Irizarry,*

893 P.2d at 1109, 1110. Therefore, the first element of estoppel is satisfied.

The second element of estoppel requires that Irizarry reasonably changed his position in reliance upon Parker's representations. This is a largely factual question and perilously fraught with uncertainty. Irizarry married, and he and his wife have four children. He testified that he began dating his current wife only after he became convinced that Parker wanted no contact and would accept no financial help from him. He reasonably knew that she was capable of providing for the children. He further testified that he has a low-paying job as a first lieutenant in the United States Marine Corps and virtually no savings. The trial court found that "in reliance on [Parker's statements] he got on with his life, got married and started a family." Certainly the awareness of a consistent and long-term financial drain such as child support would logically have affected critical life decisions such as family size, pursuit of higher education, type of job, and acceptable salary level. In addition, if the support obligation had been established earlier and Irizarry had been making current payments throughout the years, his position would be different now in that he would not be potentially faced with "double" payment for both current support and reimbursement.

■ A situation such as this, which presents this court with a close question on the facts, illustrates the wisdom of our "fair degree of deference" to the trial court. While the evidence before the trial court was somewhat ambiguous, " 'the trial judge has observed "facts" such as the witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate

2. " 'It is not enough that the person who heard [the representations] deemed that he was warranted in acting as he did; the language used ought of itself to furnish the warrant.' " *Farmers & Merchants Bank v. Universal C.I.T. Credit Corp.,* 4 Utah 2d 155, 159, 289 P.2d 1045 (1955) (quoting *J.T. Fargason Co. v. Furst,* 287 F. 306, 310 (8th Cir.1923)).

3. See *Burrow v. Vrontikis,* 788 P.2d 1046, 1048 (Utah Ct.App.1990), in which the court found

that a biological father's failure to pay child support was based on more than mere silence when the mother of the child told a friend that she did not ever want to see the child's biological father again and the friend relayed the statement to the father, although the mother had not directed her to. For a more complete discussion, see the court of appeals' analysis in *State v. Irizarry,* 893 P.2d 1107 (Utah Ct.App.1995).

courts.' " *Jouflas v. Fox Television Stations, Inc.*, 927 P.2d 170, 174 (Utah 1996) (quoting *C & Y Corp. v. General Biometrics, Inc.*, 896 P.2d 47, 53 (Utah Ct.App.1985)); *see also Pena*, 869 P.2d at 939. Therefore, while in reviewing a mixed finding of fact and law appellate " 'courts are free to make an independent determination of the trial court's conclusions,' . . . the trial court's factual findings shall not be set aside on appeal unless clearly erroneous." *State v. Tyler*, 850 P.2d 1250, 1253 (Utah 1993) (quoting *State v. Templin*, 805 P.2d 182, 186 (Utah 1990)). To meet the clearly erroneous standard, an appellate court must determine that the trial court's factual findings are "against the clear weight of evidence," or the court must "otherwise reach[ ] a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). After full review of the evidence, there is no basis for our having a definite and firm conviction that the trial court was mistaken in finding that Irizarry changed his position in reasonable reliance upon Parker's representations. Therefore, the second element of estoppel is satisfied.

Turning to the injury element of estoppel, the facts of the case before us rebut Parker's argument that section 78–45a–3's four-year cap on recovery of reimbursement renders estoppel unnecessary by always providing adequate protection for an unwed father. Although $10,000—the amount at issue here—may not be a large amount by some standards, it looms large to someone whose cash assets total less than $200 and who owns nothing substantial that he could sell. Irizarry and his wife have four children of their own who have a claim to support at least as strong as that of the twins. As it is, Irizarry is required to pay a monthly ongoing support obligation for the twins, which he does not contest. If estoppel were not available, then the later-born children of a father such as Irizarry could be deprived of their actual present support in order to reimburse the mother of earlier-born children for her past support of those children even though there is no legal requirement that such payments be used for the benefit of the children.

Furthermore, according to the income statements for the relevant period, upon which plaintiff Department relied for its support guidelines, Parker earned more than $105,000 from 1986 through 1991, while Irizarry's total income from 1985 through 1990 was only slightly more than $72,700. During much of this period, Parker was living with her parents and her mother was providing child care. Parker contributed to the household expenses and paid her mother for watching the children when she could. Her parents paid her medical expenses, largely through their insurance, and she is gradually endeavoring to pay them back. Thus, it would appear that Parker's children may have had access to a standard of living well beyond that available to Irizarry's later-born children. Therefore, we decline to overrule case law that permits the application of estoppel to reimbursement for child-rearing expenses.

## CONCLUSION

 The trial court correctly applied estoppel, and the court of appeals properly affirmed the trial court. Any inclination on our part to decide differently is insufficient justification for overturning the fact-based conclusions of two lower courts. This is especially so since "[c]onsistent with [this] [c]ourt's standard of review on the issue of waiver," an appellate court grants "similar broadened discretion to the trial court on the issue of equitable estoppel." *Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 65 (Utah Ct.App.1994) (citing *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935 (Utah 1993)).

Affirmed.

STEWART, Associate C.J., and RUSSON, J., concur in Justice HOWE's opinion.

ZIMMERMAN, Chief Justice, dissenting:

I respectfully dissent. I would hold that equitable estoppel ordinarily does not apply to cases where an unwed custodial parent seeks back child support from a noncustodial parent. In the alternative, if equitable estoppel does apply, I would find that the trial court's findings of fact do not support the

conclusion that the requirements of equitable estoppel have been met. Therefore, I would reverse.

The majority goes to great lengths to characterize Parker's claim as "reimbursement of child-rearing expenses" in order to find that the doctrine of equitable estoppel applies. It does so to avoid the consequences of our prior case law, which clearly states, "The right to support from the parents belongs to the minor children and is not subject to being bartered away, extinguished, estopped or in any way defeated by the agreement or conduct of the parents." *Hills v. Hills*, 638 P.2d 516, 517 (Utah 1981) (citations omitted). It is clear to me that what Parker is claiming is back child support, as contemplated by section 78–45a–3 of the Utah Code. That section provides that when a delayed paternity action is filed, "[t]he father's liabilities for *past education and necessary support* are limited to a period of four years next preceding the commencement of an action." Utah Code Ann. § 78–45a–3 (emphasis added). The monies sought here are clearly within this definition. The majority's characterization of Parker's claim as "reimbursement to a parent ... of monies already expended in support of children who ... were well cared for and not left in need" is a convenient fiction. The statute certainly cannot have assumed that the only monies recoverable were those never spent to support or educate the minor.

Utah's child support laws and the guidelines that accompany them are designed to maximize support to children from both parents. *See* Utah Code Ann. § 78–45–3(1) ("Every father shall support his child ...."); id. § 78–45–4(1) ("Every woman shall support her child...."). Utah's clear policy is to require both parents to support their child to the extent that each is financially able. To that end, Utah's child support guidelines provide a worksheet on which a calculation is made that essentially compares the relative income and obligations of each parent. *See* Utah Code Ann. § 78–45–7.7. The worksheet takes these figures and specifies an overall amount of support to be provided to the child, based on the combined income of both parents. *See id.* The worksheet then calculates the relative amount of support due to the child from each parent, in proportion to each parent's income. *See id.* The fact that the noncustodial parent, in many cases the father, then pays to the custodial parent his share of the child's support in no way diminishes the fact that the custodial parent is also required to pay her share of the child's support. In effect, the majority holds that because the mother met her part of the obligation (and that part turned out to be sufficient to prevent the children from requiring public assistance), the father has been absolved of his responsibility to the child and now simply owes a debt to the mother.

Such an argument ignores the reality that a single parent supporting a child almost certainly will provide a lesser level of support than would have been the case if the other parent had paid his or her share. The money that the noncustodial parent was required by law to provide will not simply materialize in the custodial parent's bank account to be spent on the children and reimbursed from the noncustodial parent at some point in the future. In reality, the children will simply go without that support. By the majority's reasoning, any support sufficient to keep a child out of "need," which apparently means off of welfare, is definitionally adequate and all to which the child is entitled. This result seems not only unrealistic but contrary to Utah law. First, if anything above the welfare level was adequate, the legislature would not have required support guidelines based on the parents' incomes; we would have a flat per child fee that provides the same level of support regardless of parental income. As Justice Durham emphasizes in her separate dissent, child support is designed not solely to keep children off of welfare, but to support them at the level to which their parents' financial capacities entitle them. I agree with Justice Durham's statement that when one parent does not provide his or her share of support, in most instances the child's standard of living simply falls.

In toto, Parker's claim is properly characterized as one for past support of the twins, not one for reimbursement. Thus, I would hold that equitable estoppel does not apply for claims of back child support, unless record evidence can show that the support that

should have been provided by one parent was indeed provided by the other parent and that therefore the claim should truly be labeled one of "reimbursement." In the more usual application, where the children have simply done without the noncustodial parent's support, estoppel should have no application.

In the alternative, if, as the majority holds, estoppel does apply in such situations, I would hold that in this instance, the elements of estoppel have not been met. I begin with a discussion of the standard of review. Here, three aspects of the standard of review are relevant. First, as to the factual findings made by the trial court, I am constrained by the standard that provides, "[W]e will not reverse the findings of fact of a trial court sitting without a jury unless they are 'against the clear weight of the evidence, thus making them clearly erroneous.'" *MacKay v. Hardy*, 896 P.2d 626, 629 (Utah 1995) (quoting *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (additional internal quotation omitted)). In this case, the parties do not challenge the trial court's factual findings. Therefore, we are bound by them.

Second, whether the trial court correctly concluded that those found facts constituted equitable estoppel is "an issue of law." *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987). As we have noted, however, this determination begins, rather than ends, the inquiry into the amount of discretion we should give to a trial court to conclude that the facts constitute equitable estoppel. *See State v. Pena*, 869 P.2d 932, 937 (Utah 1994).

Third, having determined that this case presents an issue of the application of a stated general principle of law to specific facts, I must address the question of how closely we will scrutinize the trial court's "determination of whether a given set of facts comes within the reach of a given rule of law." *Id.* at 936. Trial courts are given differing degrees of discretion in making rulings on this sort of mixed question of fact and law, depending on several considerations. *Id.* at 938–39. It is this third question that most concerns me today.

Based upon the facts outlined by the majority, the trial court ruled that there was sufficient evidence to establish the elements of equitable estoppel. We have previously stated the elements of the general doctrine of equitable estoppel:

> Estoppel is an equitable defense that requires proof of three elements: (i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989) (citing *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979)). The trial court appears to have had in mind the proper general legal principles. It made findings as to each of these three elements. Therefore, I have no basis for concluding that the trial court did not apply a correct statement of the general law. Further, the trial court's findings of fact, which it used to support its ultimate conclusion that Parker was estopped from claiming back child support, though not uncontroverted, were not wholly lacking support in the evidence. Specifically, the court found that (i) Parker made no calls and wrote no letters to Irizarry asking for support; (ii) Parker left Irizarry's name off the children's birth certificates; (iii) Parker had the support and financial assistance of her family, and her family was discouraging her relationship with Irizarry; and (iv) Irizarry was willing to support the children, but Parker refused such support. These findings led the trial court to conclude that Parker

> made statements, took actions that led [Irizarry] to reasonably conclude that [Parker] wanted nothing to do with him and didn't want his support. In reliance upon that, [Irizarry] got on with his life, got married[,] and started a family and under those circumstances should not be responsible for the payment of support until . . . this complaint was filed.

I am left, then, with the question of whether the trial court correctly concluded that the facts it found are sufficient to support the legal conclusion that equitable estoppel has been established. More specifically, in the context of an effort by the unwed father of a child to avoid a legal child support obligation to the unwed mother, all for the benefit of the child, were the statements and acts of the mother sufficiently clear to support the legal conclusion that they were "inconsistent with a claim later asserted" for child support? I would conclude as a matter of law that they were not.

It is important to state that as a general matter, the mixed question of whether the requirements of the law of estoppel have been satisfied in any given factual situation is one that we review by granting the trial court a fair degree of discretion. Equitable estoppel is a doctrine that is simply stated, yet its principles apply across a wide variety of factual and legal situations. The sheer variety of circumstances argues strongly that we should not lightly substitute our judgment for that of the trial courts. *Pena*, 869 P.2d at 939. That does not, however, mean that we will always defer. There are times when we must expand or contract or more closely define the pasture within which the trial courts may roam in the exercise of that discretion: this is one such situation.

We have traditionally granted considerable discretion to trial courts engaged in child support determinations. *See Hunter v. Hunter*, 669 P.2d 430, 431 (Utah 1983). In *Pena*, however, we discussed the various considerations underlying our decision to grant a trial court discretion in determining "the legal consequences of facts." 869 P.2d at 937, 939. One reason to narrow the "pasture" in a particular factual context is the need to vindicate important public policies. *Id.* at 938. In the situation where an unmarried mother seeks back child support, the important public policy, discussed above, that favors ensuring that parents provide support to their children requires that we narrow the pasture in which a trial court may roam in determining whether the claimant is estopped from asserting a claim.

In the murky factual context of the rejection of an unwed father by an unwed mother, where a too-casual finding of estoppel would operate to relieve an unwed father of his legal obligation to support his child, in contradiction of public policy, I find it necessary to narrow the trial court's pasture. Utah's public policy should not permit a rejection of the unwed father to be lightly construed as a rejection of his legal obligation to support the child even absent any ongoing contact with the mother or child, which are separate legal issues. Therefore, for the trial court to find the first element of estoppel—"a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"—I would hold that the mother's statements must approach an explicit and unequivocal rejection of legally due support obligations. A finding that the element is proven by statements that could be interpreted as rejecting an ongoing personal relationship with the father should not be sustained on appeal.

In this case, the trial court found that Parker made three statements to Irizarry, all before the birth of the twins, and once telephoned Irizarry to announce the twins' birth. The prebirth statements were to the effect that Parker did not want Irizarry's money, that she wanted nothing to do with him, that she would take care of herself, and that she intended to name the children "Parker." The occasions on which she made these statements were all before the children were born, during the time when she and Irizarry were working out their relationship and she was dealing with the ongoing challenges of pregnancy and an uncertain future. These statements are not clear enough to be inconsistent with a later claim for past support. Even the most damaging statement Parker made, that she did not want Irizarry's money, is ambiguous at best. It could have referred to pregnancy and childbirth expenses just as easily as future child support.

I am unable to say that the words Parker uttered were clearly a rejection of Irizarry's legally obligated support for the children, as opposed to a rejection of any ongoing personal relationship with Irizarry. Therefore, these facts should not support a finding that

the first element of estoppel is met. The trial court's finding of estoppel should fall.

In finding that the facts are sufficient to find estoppel, the majority places great importance on Irizarry's claim that he relied on Parker's statements, going on to marry and have children, incurring financial obligations that he would not have incurred had he known of his obligation to support the children. This argument should fail. First, this seems an unrealistic assumption. There is no proof Irizarry would otherwise have put his personal life on hold simply because he might someday have to pay child support. A more logical inference is that he went on to marry because he understood that the mother of his twins had no interest in a relationship with him. This inference is strengthened by the fact that, well after this action was filed, he continued to increase his own financial obligations, having a fourth child with his wife, Patricia, with full knowledge that his obligations to the twins were at issue before the courts. I certainly do not suggest that Irizarry was not entitled to do so, but these actions undermine his claim that he would not have gone on with his life, married, and had children had he known that Parker would look to enforce his obligation to provide support to the twins. As we stated in *Baggs v. Anderson*, 528 P.2d 141 (Utah 1974), the reliance requirement "is not satisfied by the mere fact that he indulged in the pleasant and euphoric assumption that he would not have to meet his obligations and that he bought a more expensive car and moved to a more expensive apartment." *Id.* at 144.

Second, beyond the unreasonableness of the inference the majority draws from Irizarry's conduct, the fact is his uncontroverted testimony shows he did not rely on Parker's statements as freeing him from his obligation. He stated that even after she said that she did not want anything to do with him, did not want his money, and would take care of herself, he believed that he was still financially responsible for his children. At that time, he stood ready to support the children had it been required of him.

Third, Irizarry's claim of estoppel ultimately rests on the conclusion that it was reasonable for him to rely on Parker's state-

ments and actions as indicating that she would not seek child support from him. In light of the discussion above regarding the ambiguity of Parker's statements, and in light of Utah's law on the importance of child support, it would not be reasonable for Irizarry to rely on Parker's statements as freeing him from his support obligation. Utah law provides, "The right to support from the parents belongs to the minor children and is not subject to being bartered away, extinguished, estopped or in any way defeated by the agreement or conduct of the parents." *Hills*, 638 P.2d at 517. That, under facts not present here, equitable estoppel might be applied to prevent a parent from claiming past child support does not negate the fact that a custodial parent cannot affect a child's right to future support from that child's other parent. Because Parker could not waive the twins' right to support, Irizarry could not have been entitled to assume that he would never be required to support his children.

And finally, because the law also provides for collection of past child support for four years prior to a paternity action, Utah Code Ann. § 78-45a-3, the most Irizarry could have relied upon was that he would not be required to support his children for more than four years prior to the time Parker filed a paternity action against him.

I emphasize that I am not here substituting my judgment for that of the trial court, nor would I signal an intent to closely scrutinize factual findings of estoppel in general. I would simply hold that in situations where an unwed pregnant woman may initially be unenthusiastic about continuing a personal relationship with the father, her statements must clearly reject money for the support of the child before she can be held estopped from collecting such support. There needs to be some specific indication that the mother is rejecting the legally due child support, not just contact by the father and general indications of support from the father, before we should permit a finding of estoppel. In the metaphor of *Pena*, I would not leave trial judges a small pasture. I would fence off only a factual corner of that pasture because of the strong public policies implicated by our declining to do so.

I would reverse the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

DURHAM, J., concurs in Chief Justice ZIMMERMAN's dissenting opinion.

DURHAM, Justice, dissenting:

I write to underscore the point of Chief Justice Zimmerman's dissenting opinion, which I join, that the majority has mischaracterized the nature of the monies sought in this case. The majority asserts that the children in this case were "well cared for and not left in need." But the dissent accurately notes that the child support guidelines in Utah account for the standard of living available to children based on the financial capacities of *both* their parents. It is obvious that the total amount of a custodial parent's income will determine lifestyle and standard of living. When the child support contributions of a noncustodial parent are missing, the children may indeed be "adequately" fed, clothed, and housed and may avoid the public welfare rolls. However, their standard of living may be greatly below that which they should be able to enjoy with both parents supporting them. The neighborhood they live in, the comfort and safety of their transportation arrangements, the schools they attend, the educational enrichment opportunities (music, dance, art, and sports lessons) they have, the travel and recreational aspects of their lives, the medical and dental services they need—all of these things are dependent on the total amount of income available for their support. A custodial parent who is doing without contributory support payments has very limited options: (1) The children do without the level and quality of life they are otherwise entitled to expect; (2) the custodial parent goes into debt to provide that quality of life, thus jeopardizing future financial well-being and educational opportunities; or (3) in rare circumstances the custodial parent may have independent sources (e.g., family money or independent wealth) to fill the gap. In the first two cases, the children have suffered either a past or a future detriment and fairness requires the noncustodial spouse to cure it with the payment of back-due amounts. The third scenario is so rare as to seem almost irrelevant, but even where the children have not done without and the custodial parent has not incurred legal debt, it is hard to see why a parent should be relieved of any of the burdens of child-rearing costs by virtue of not having contributed to them in a timely manner. It is simply unrealistic to suggest, as the majority opinion does, that the money in question here is now the custodial parent's money, not the children's. The children's household is their custodial parent's household; her lifestyle is their lifestyle, and her gains and losses are theirs.

ZIMMERMAN, C.J., concurs in Justice DURHAM's dissenting opinion.