2011 UT App 40

**Christopher LaCHANCE, Petitioner and Appellee,**

v.

**Ashley RICHMAN, Respondent and Appellant.**

No. 20090773–CA.

Court of Appeals of Utah.

Feb. 3, 2011.

Rehearing Denied March 30, 2011.

David S. Pace, Salt Lake City, for Appellant.

Christopher LaChance, Sandy, Appellee Pro Se.

Before Judges McHUGH, THORNE, and VOROS.

## OPINION

THORNE, Judge:

¶ 1 Ashley Richman appeals from the district court's August 19, 2009 Order denying her claim for a retroactive child support award against appellee Christopher LaChance for the time period between August 2003 and December 2006. We affirm.

## BACKGROUND

¶ 2 Richman and LaChance were never married, but they dated and lived together beginning in about 2002. On March 26, 2003, Richman gave birth to a son, P.R.L. It is uncontested that LaChance is P.R.L.'s father. The parties separated in August 2003, after which P.R.L. resided primarily with Richman. LaChance was allowed regular visitation under an informal agreement reached by the parties.

¶ 3 The parties also had an informal child support agreement, although there is now a dispute between the parties as to how much LaChance actually paid Richman. Richman testified that LaChance had paid her approximately $200 in 2003, $1000 in 2004, and $1500 in both 2005 and 2006. LaChance testifies that he paid Richman significantly more: $200 per month from October 2003 until the middle of 2005 and $250 per month thereafter.

¶ 4 The parties' informal custody and support arrangement continued until January 2007, when Richman moved to Arizona. On January 3, 2007, LaChance filed a Verified Petition for Paternity and Custody Order in Utah district court. LaChance's petition represented that he and Richman had been sharing custody of P.R.L. and sought a child support award whereby he would pay Richman $232 per month. LaChance also sought a temporary restraining order to prevent

Richman from removing P.R.L. from the state of Utah. Richman promptly filed an Answer and Counter Petition denying La-Chance's shared custody claim and seeking an award of sole custody. Paragraph 8 of Richman's Answer and Counter Petition requested that LaChance "be ordered to pay child support to [Richman], in an amount deemed reasonable by the Court, pursuant to the Uniform Child Support Guidelines" and stated that "[t]he issue of child support arrearages may be determined by further judicial or administrative determination. [Richman] is entitled to child support arrearages dating to approximately August 2003." La-Chance's Answer to Counter–Petition contained a general denial of the allegations contained in Richman's Paragraph 8.

¶ 5 On February 7, 2007, the district court ruled on LaChance's restraining order motion, set up a temporary joint custody schedule, and ordered LaChance to pay Richman $232 per month in child support during the pendency of the action. On April 16, Richman filed a Motion for Temporary Orders, seeking sole custody of P.R.L. and an order that LaChance "pay child support in an amount that represents the parties' correct gross monthly incomes." LaChance opposed Richman's motion, and a dispute arose between the parties regarding the amount of time P.R.L. had stayed with each party. A May 9 minute entry indicates that the parties stipulated that child support "shall be adjusted according to the overnights." On July 5, the district court entered an Order on Motion for Temporary Orders determining that Richman had sole custody of P.R.L. for child support purposes and adjusting LaChance's child support payment to $362.70 per month, based on the parties' incomes. The July 5 order did not address child support arrearages.

¶ 6 On December 28, 2007, the parties submitted a stipulation to the district court on child custody and support issues. The stipulation agreed that, based on the parties' incomes, LaChance's base child support payment should be not less than $494 per month. The stipulation expressly reserved the issue of child support arrearages for future judicial or administrative determination. On March

18, 2008, apparently as a result of the stipulation, the district court entered a Decree of Paternity, Parent–Time, and Child Support setting LaChance's child support payment at $494 per month and reiterating that "child support arrearages shall be reserved for further adjudication or as determined by an administrative hearing."

¶ 7 On June 25, 2008, Richman filed a Motion for Further Orders seeking child support from the date of the parties' separation in August 2003 through December 2006, the month prior to the initiation of this litigation. Specifically, Richman's motion asked for an order "that [LaChance] owes $494.00 per month for child support from August, 2003 to December, 2007 [sic]," and that La-Chance "be ordered to pay $15,760.00 in back child support from the time of separation in August 2003 through December, 2006." Richman filed a contemporaneous Motion for Order to Show Cause seeking to compel La-Chance to pay $3144 in outstanding child support from 2007. On September 29, 2008, the district court ruled on Richman's motions, rejecting her argument that La-Chance's 2007 child support obligation was modified by subsequent orders and ordering, "Any claimed issue of child support arrearages prior to the time of Petition is reserved for trial."

¶ 8 A hearing on the issue of child support arrearages was finally held on August 3, 2009. Prior to the hearing, neither side submitted briefing advancing any legal argument as to how arrearages should be proven or calculated. Richman, however, submitted exhibits that included income information for both parties from 2003 onward, proposed Child Support Worksheets for the years 2003 to 2006, and a document showing Richman's proposed arrearage calculation based on the difference between the Child Support Worksheets for each year and the amounts she claimed LaChance had paid.

¶ 9 At the August 3 hearing, the parties' factual disputes appear to have centered largely around two issues: how much parent time LaChance had exercised during the arrearage period and how much LaChance had paid Richman over that period. Additionally, a dispute arose as to whether Richman's

entitlement to pre-petition child support was barred by the doctrines of estoppel or laches. In closing arguments, Richman's counsel referred the district court to *Department of Human Services ex rel. Parker v. Irizarry*, 945 P.2d 676 (Utah 1997), for the proposition that estoppel was inappropriate in the present case. During the discussion of *Irizarry*, the following colloquy occurred:

> [Richman's Counsel]: [C]hild support can't be waived. They can't make an agreement to say I don't want child support.... That's something that runs to the child, and the child shouldn't be placed in a negative situation because of that. With child support arrearages to the same extent, unless you reach a very high level and legal acrobatics even to claim this isn't child support we're talking about, but, you know, a debt of child care expenses that really doesn't go to the child.
>
> There isn't a legal justification under statutory framework to not address arrearages for that, and that's—anyway, that's the case that addressed that I don't think it—I don't think they meet any of the standards that applies to it and the separate amount. As I say, it's child support expenses. It can't be waived by the parties.... Under the paternity statute, at the time the paternity action was filed, you're allowed to go back four years earlier just to set out what there are [inaudible].
>
> [The Court]: But according to this state, they're back not for child support, but for reimbursement.
>
> [Richman's Counsel]: Yes.
>
> [The Court]: Interesting distinction.
>
> [Richman's Counsel]: Yes.

The parties presented further argument to the district court regarding their positions on the interplay between reimbursement, estoppel, and laches, but Richman presented no legal authority for the proposition that the reimbursement analysis as discussed in *Irizarry*, *see* 945 P.2d at 679–80, had been superceded by statute and was no longer valid.

¶ 10 The district court ruled from the bench that the pre-petition sums sought by Richman were in the nature of reimbursement rather than child support, that such sums were recoverable only if Richman could demonstrate an agreement between the parties or unmet need on the part of the child, and that Richman had failed to demonstrate either of those bases for recovery. The district court's written Order, entered on August 18, 2009, reiterated the court's oral conclusions and denied "[Richman's] claim for amounts owing prior to January 2007." Richman initiated an appeal in this court by filing a timely Notice of Appeal on September 17, 2009.

¶ 11 On October 7, 2009, despite her initiation of an appeal in this court, Richman filed a Motion to Alter or Amend Judgment Pursuant to Rule 59 in the district court, *see generally* Utah R. Civ. P. 59, asserting for the first time that *Irizarry*'s reimbursement analysis had been superceded by statute. Specifically, Richman argued that Utah Code section 78B–12–202(4) mandates that pre-petition child support be calculated under the Utah Child Support Act (the Act), *see* Utah Code Ann. §§ 78B–12–101 to –403 (2008 & Supp.2010). Section 78B–12–202(4) states, "When no prior court order exists, the court shall determine and assess all arrearages based upon the guidelines described in [the Act]." *Id.* § 78B–12–202(4) (2008).

¶ 12 The district court denied Richman's rule 59 motion on two grounds. First, the district court ruled that the motion, filed some seven weeks after the challenged judgment, was untimely under rule 59. *See generally* Utah R. Civ. P. 59(e) ("A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."). Second, the district court ruled that Utah Code section 78B–12–202(4) and the remainder of the Act did not apply to Richman's claims because they were in the nature of reimbursement, rather than for unpaid, past due child support. Richman did not file either an original or amended notice of appeal pertaining to the denial of the rule 59 motion, and we proceed under her timely notice of appeal from the August 18 Order.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 On appeal, Richman argues that the district court erred by failing to

calculate and award Richman child support arrearages pursuant to the Act's guidelines, i.e., based on the parties' incomes, and by instead requiring Richman to demonstrate an entitlement to reimbursement under *Irizarry.* Richman's argument requires interpretation of the Act and thus presents a question of law that we review for correctness, *see Haynes Land & Livestock Co. v. Jacob Family Chalk Creek, LLC,* 2010 UT App 112, ¶ 9, 233 P.3d 529 ("The proper interpretation and application of a statute is a question of law which we review for correctness ...." (internal quotation marks omitted)). However, in order to preserve an issue for appeal, a party must present it " 'to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *Robertson's Marine, Inc. v. I4 Solutions, Inc.,* 2010 UT App 9, ¶ 10, 223 P.3d 1141 (quoting *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801).

## ANALYSIS

¶ 14 Richman argues that the district court erred when it applied the reimbursement analysis discussed in *Department of Human Services ex rel. Parker v. Irizarry,* 945 P.2d 676 (Utah 1997), to her claim for an award of pre-petition child support. Richman argues on appeal that the *Irizarry* reimbursement analysis has been superceded by changes to Utah Code section 78B–12–202(4), which now states, "When no prior court order exists, the court shall determine and assess all arrearages based upon the guidelines described in [the Act]," Utah Code Ann. § 78B–12–202(4).[1] While Richman's argument raises an interesting issue, we decline to address that issue because Richman failed to preserve it in the district court.

¶ 15 Generally, a party cannot raise an issue for the first time on appeal. *See In re E.R.,* 2001 UT App 66, ¶ 9, 21 P.3d 680.

Instead, the party must preserve the issue for appeal by presenting it " 'to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *Robertson's Marine, Inc.,* 2010 UT App 9, ¶ 10, 223 P.3d 1141 (quoting *438 Main St.,* 2004 UT 72, ¶ 51, 99 P.3d 801). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id.* (internal quotation marks omitted). Issues that are not properly preserved are usually deemed waived. *See 438 Main St.,* 2004 UT 72, ¶ 51, 99 P.3d 801.

¶ 16 Here, Richman did not make a timely argument to the district court that Utah Code section 78B–12–202(4) precluded an *Irizarry* reimbursement analysis. The record is devoid of any reference to that section until Richman raised it in her untimely rule 59 motion. Furthermore, Richman appears to have invited any error in applying a reimbursement analysis when her counsel responded affirmatively to the district court's observation that "[a]ccording to this state, they're back not for child support, but for reimbursement." *See generally State v. Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 ("[U]nder the doctrine of invited error, we have declined to engage in even plain error review when 'counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings].' " (second and third alterations in original)). Under these circumstances, Richman has not preserved her argument for appeal, and we do not consider it.

## CONCLUSION

¶ 17 Richman argues on appeal that the district court failed to properly calculate and award pre-petition child support. However, she failed to preserve that argument in the district court. Accordingly, Richman's argu-

---

1. *Department of Human Services ex rel. Parker v. Irizarry,* 945 P.2d 676 (Utah 1997), addressed an appeal from a 1993 trial and decree. *See id.* at 679 n. 1. The 1992 version of Utah Code section 78B–12–202(4), which was not cited in *Irizarry* but would presumably have governed the 1993 *Irizarry* decree, stated, "When no prior court order exists, the court shall determine and assess all arrearages based upon, but not limited to: (a)

the amount of public assistance received by the obligee, if any; and (b) the funds that have been reasonably and necessarily expended in support of spouse and children." Utah Code Ann. § 78–45–7(4) (1992). In 1994, the statute was amended to reflect, in substance, the current language. *See* Utah Code Ann. § 78–45–7(4) & amend. notes (Supp.1994).

ment is deemed waived and we do not consider it. The district court's August 18, 2009 Order is hereby affirmed.

¶18 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and J. FREDERIC VOROS JR., Judge.